JAMES N. DICKSON AND OTHERS *v.* L. & S. RAWSON AND OTHERS.

An assignment of property by an insolvent debtor to certain creditors of his, for the purpose of paying debts due to them and also other preferred creditors, is within the provisions of the third section of the act of March 14, 1838, (Swan's Stat., ed. 1841, 717,) and inures to the benefit of all the creditors of the assignor.

It is immaterial whether such assignment is made for the benefit of the preferred creditor, not being an assignee, or to indemnify the surety of the assignor to such creditor.

In either case, the assignment secures the debt, and entitles the creditor to compel an application of the fund to its payment.

The character and legal effect of such an assignment, is determined at the time it is made ; and is not changed by the fact that the property assigned, turns out to be no more than sufficient to pay the assignees.

If, at the time it is made and accepted, it subjects the assignee to account to any other creditor of the assignor, the assignment is in trust, and the assignee a trustee within the meaning of that act.

IN Chancery.   Reserved in Stark county.

The complainants, as judgment creditors of Brobst & Rudy, seek by their bill to charge L. & S. Rawson, Woodbury, Avery & Co., and J. R. Cecil & Co., as trustees for the benefit of all the creditors of Brobst & Rudy, under the provisions of the third section of the amendment of March 14, 1838, to the chancery practice act.   Swan's Stat., ed. 1841, 717.   The material facts are the following :

On the 6th day of September, 1850, Brobst & Rudy, insolvent debtors, and in contemplation of insolvency, made an assignment, of which the following is a copy :

" Whereas we the undersigned are indebted to L. & S. Rawson, of the town of Massillon, in about the sum of twelve hundred dollars ; to Woodbury, Avery & Co., of the city of New York, in about eight hundred dollars ; and to J. R. Cecil & Co., of the town of Massillon, in about the sum of eight hundred dollars :  Now, for the purpose of securing said creditors, as far as possible, the payment of said sums, we do hereby sell and transfer to them, the said L. & S. Rawson, Woodbury, Avery & Co., and J. R. Cecil & Co., all our stock of goods situate and being in the store now occupied by us in Navarre, in Stark county,

Dickson et al. *v.* Rawson et al.

Ohio ; the said L. & S. Rawson, Woodbury, Avery & Co., and J. R. Cecil & Co., to convert the same into money. Also we sell and transfer to the parties aforesaid, all our notes, bonds, bills and accounts, to be by them collected ; and when said goods, notes, bills, bonds and accounts, shall have been converted into money, to be disposed of as follows : First, to pay the expenses of such conversion. Second, to pay said indebtedness aforesaid ; or, if the said L. & S. Rawson shall retain one thousand bushels of wheat now in litigation, then the value to be deducted from the indebtedness described to them. Third, the balance to be refunded to the undersigned ; but it is distinctly understood that the title to all the aforesaid property is to vest in said L. & S. Rawson, Woodbury, Avery & Co., and J. R. Cecil & Co., and that after paying said indebtedness aforesaid, and all reasonable costs and charges, the balance, if any, shall be accounted for to the undersigned. It is further agreed, that the said L. & S. Rawson ; Woodbury, Avery & Co., and J. R. Cecil & Co., shall, after paying themselves as aforesaid, pay over to Daniel Groff any surplus that may remain in their hands, not exceeding five hundred dollars, to indemnify him as security for us to H. B. Harris.

" C. A. BROBST,
" ISAAC RUDY.

" September 6th, 1850."

The property assigned turned out to be not more than sufficient to pay the debts due to the assignees, and left no surplus for Groff.

*Bierce & Pease*, and *Alex. Biem*, for the complainants.

Mr. *Biem* made the following points :

The transfer of the property to the assignees, was an assignment in trust for the benefit of all the creditors. *Mitchell* v. *Gazzam*, 12 Ohio Rep. 315 ; *Griffin* v. *Barney*, 2 Comst. Rep. 371 ; 6 Hill Rep. 438.

The assignees were constituted trustees for Daniel Groff ; and it does not lie in their mouths to say that the property fell short, and that there is nothing left for Groff. 2 Comst. Rep. 371 ; 6 Hill Rep. 438.

Groff was a creditor within the letter and spirit of the statute. If this is not so, then the law can be very easily evaded. The failing debtor need but make the surety the *cestui que trust*, and the thing is accomplished ; the indemnity of the surety will inure to the creditor. *Vail* v. *Foster et al.*, 4 Comst. Rep. 312 ; *Curtis* v. *Tyler*, 9 Paige Rep. 432 ; *Bank of Auburn* v. *Throop*, 18 Johns. Rep. 505 ; 1 Story's Eq., secs. 502, 638 ; 11 Conn. Rep. 119 ; 15 Conn. Rep. 383 ; *Green* v. *Dodge*, 6 Ohio Rep. 80.

A surety may obtain indemnity, but, like a creditor, he must obtain it directly to himself, without the intervention of a trustee. So far as he has a right to obtain indemnity, he is a creditor, and is to be so treated under the statute.

The fact that the assignees were creditors, does not alter their character as trustees. They were not mortgagees merely, as is claimed by their counsel, but took the property for their own indemnity, and also in trust for Groff, and thereby became trustees for all the creditors.

The character of the transaction is not altered by showing that there is no surplus. A surplus was provided for, and the transfer was thereby stamped with the character of a trust.

The assignees were separate creditors of the assignors: yet the transfer is to the assignees jointly. Are they not, therefore, trustees for each other?

*Keith & Underhill*, and *A. G. Thurman*, for the assignees.

*A. G. Thurman* made the following points:

I.   Were the clause for Groff's benefit out of the assignment, there could be no question that the statute does not apply to it. *Doremus* v. *O'Harra*, 1 Ohio St. Rep. 49, 50; *Atkinson* v. *Tomlinson*, Ibid. 237, 241, 243; *Harkrader* v. *Leiby*, 4 Ohio St. Rep. 602.

The idea that because the assignees were several and not joint creditors of the assignors, the assignment created a trust, has no foundation. In *Atkinson* v. *Tomlinson*, supra, the assignees were not joint creditors, or sureties, of the assignor, and yet the assignment was held to be unaffected by the statute. So, in *Harkrader* v. *Leiby*, supra, it was admitted that if *all* the beneficiaries of the mortgage had been *mortgagees*, the statute would have had no operation, notwithstanding they were several and not joint creditors.

The only ground, then, for claiming that the assignment in question is an assignment in trust, within the meaning of the statute, is the clause for Groff's benefit, he not being an assignee.

In answer to this, I maintain:

1. That Groff being a mere surety, and not a creditor, an assignment to indemnify him does not fall within the statute.

2. The clause in question was a mere authority to pay to Groff out of a balance, should there be any. It was precisely what took place in *Atkinson* v. *Tomlinson*, supra. The only difference is, that here the authority is contained in the assignment, and there it was contained in an order drawn on and accepted by the assignees. But, in substance there is no difference, for the reason why the authority was contained in a separate instrument in *Atkinson* v. *Tomlinson*, was that the assignment was, upon its face, *an absolute sale.* That it was conditional was proved by extrinsic evidence.

I have said that in substance there is no difference between the cases. I should have said, that if Groff is to be considered a creditor, there is none.

II. The assets were insufficient to pay the debts to the assignees. It was impossible, therefore, that there could be anything to pay to Groff. The clause in his favor ought, therefore, to be regarded as a nullity.

The cases cited by complainants' counsel, from Hill and Comstock, might, at first sight, seem opposed to this point. But they were cases arising under the statute of frauds, and in which the balance was to be paid to the assignors. They were, of course, governed by the settled rules of construction of that statute. But those rules do not govern cases under the statute now before us. These rules are very stringent, the object being to prevent *fraud.*

But the statute under consideration embraces *innocent* as well as fraudulent assignments, and I submit that, (within its true meaning and spirit,) an assignment made in good faith, ought not to be affected by it, in consequence of a wholly nugatory clause; when, if the clause were not in it, the statute would have no operation upon it.

RANNEY, C. J. In the carefully considered cases of *Doremus* v. *O'Harra*, and *Atkinson* v. *Tomlinson*, 1 Ohio St. Rep. 45, 241; as well as in *Bloom* v. *Noggle*, and *Harkrader* v. *Leiby*, 4

Ohio St. Rep. 45, 602, the extent, operation, and proper construction of the act of March 14, 1838, relating to the assignment of property by insolvent debtors, in trust, with the design of preferring some creditors to the exclusion of others, were fully discussed, and the conclusions of this court have been explicitly stated.

It is only necessary now to repeat, that the act does not extend to, or in any way affect, conveyances or mortgages made by a failing debtor to his creditor for the purpose of paying or securing his debts; but that it does control every transfer or conveyance of property, whether by mortgage or otherwise, made by an insolvent debtor, in view of his insolvency, to be held by the person taking it, for the benefit of some one or more of the creditors of the debtor, other than himself. To bring the case within the operation of the statute, the conveyance must be in *trust*, and the person receiving the property, thereby constituted a *trustee* for some one or more of the creditors of the debtor, to the exclusion of others. Whether it is so in trust, and the assignee or grantee such trustee, depends upon the question whether, by the terms of the instrument or by necessary implication, he is liable to account to the preferred creditor for the property in his hands, and for the manner in which he disposes of it. If a court of chancery, at the instance of the creditor, would compel him thus to account, the character of the transfer, and his own position, are thereby determined; and the statute then steps in and enlarges the trust, and makes it *inure* to the benefit of all the creditors, and distributes the fund to all, in proportion to their respective demands.

In the case now before us, the assignment was made by debtors confessedly insolvent, and in view of their insolvency, to a part only of their creditors. The assignees are directed to convert the property into money, and after paying the expenses and the debts due to themselves, to pay over to Daniel Groff a sum not exceeding five hundred dollars, to indemnify him as a surety of the assignors to one Harris. Neither Groff nor Harris are amongst the assignees to whom the property was transferred; and for this reason it is claimed by the complainants, that the liability

to account and the character of the conveyance are determined, and the case brought within the terms of the statute.

The defense rests upon the denial that Groff was a *creditor* within the meaning of the statute ; and upon the establishment of the fact, that the avails of the property turned out to be no more than sufficient to pay the debts due to the assignees, and left no surplus to be applied to the indemnity of Groff.

We have carefully considered both these positions, and are of the opinion, that neither of them can avail to take the case out of the operation of the statute.

1. " The design to prefer one or more *creditors*," it is very true, must be established ; but we do not consider it necessary to inquire, whether a surety merely, before paying the debt, is a *creditor* within the meaning of the act ; as the solution of the question could, in no possible case, be of the least materiality. The assignors must be presumed to have *designed* the necessary legal effect of their own act. What this was, is clearly and definitely settled. As said by Bronson C. J., in *Vail* v. *Foster*, 4 Com. R. 314 : "It is a settled rule in equity, that the creditor shall have the benefit of any counter bonds or collateral securities which the principal debtor has given to the surety, or person standing in the situation of a surety, for his indemnity. Such securities are regarded as trusts for the better security of the debt, and chancery will compel the execution of the trusts for the benefit of the creditor." See also 4 Kent's Com. 307 ; 1 Story's Eq., secs. 502, 638 ; *Green* v. *Dodge*, 6 O. R. 80.

In legal effect, therefore, the indemnity provided for Groff in the assignment, was a security of the debt upon which he was surety, and entitled the creditor, Harris, to bring the trustees to account, and to compel an application of the trust fund to the payment of his debt. This review of the subject, makes it entirely immaterial, in all cases, whether the assignment is made for the direct benefit of the creditor, or to indemnify the surety of the assignor to such creditor ; the obligation to account to the creditor, if not expressly stated, arising " by necessary implication " from the terms of the instrument.

2. We are equally clear upon the other ground of defense.

Upon general principles it has come to be well settled, that an assignment for the benefit of particular creditors, and securing a benefit to the assignor before all his creditors are paid, is fraud-ulent and void. *Goodrich* v. *Downs*, 6 Hill 438 ; *Barney* v. *Griffin*, 2 Com. 371. And in these cases, it has been defini-tively determined, that the assignment cannot be aided by ex-trinsic evidence that the assigned property would not sell for enough to pay the creditors provided for. See also *Grover* v. *Wakeman*, 11 Wend. 187. In the case of *Goodrich* v. *Downs*, the court say : " It is said that there will be no surplus for the debtor after paying the four creditors who are provided for by the assignment, and consequently that the deed may stand. The parties to the assignment, after having expressly provided for a surplus, are not at liberty to say that such a state of things was not contemplated at the time the conveyance was made. They are estopped by the deed to deny it. And besides, the case does not turn upon the contingency of how much or how little the property may bring, but upon the nature of the transaction." * * * * " Although the other trusts, if they stood alone, might be supported, the illegal trust vitiates all the rest."

The statute, it is true, does not avoid the conveyance, but it nullifies the attempt of the debtor to confine its benefits to a part only of his creditors, and makes it inure to the benefit of all. The declaration of trust is illegal, and the statute avoids it, and compels the assignees to become trustees for all the creditors of the assignor. It is of no importance that the assignees have claims which they might have secured upon the property, if they had attempted nothing more. When they consent to become trustees for any other creditor, " they become of necessity, by force of the statute, trustees for all, and in respect to all the prop-erty transferred by the assignment." *Harkrader* v. *Leiby*, 4 O. St. R. 613. Once impressed with this character, they are sub-ject to the supervision and control of a court of equity, and the *cestuis que trust* include all the creditors of the assignor. They all have a *pro rata* interest in the trust property, and are all en-titled to the appropriate remedy to compel its application. We are, therefore, of opinion, that the character and legal effect of

such an assignment is determined at the time it is made and accepted, and is not changed by the fact, that the property assigned turns out to be no more than sufficient to pay the assignees. If, at the time it is made and accepted, it subjects the assignees to account to any other creditor of the assignor, the assignment is in trust, and the assignees *trustees* within the meaning of the statute.

*Decree for complainants.*