Scott, J.
The question reserved in this case is thus stated in the order of reservation: “ Whether the contract entered into bv *328 Asa B. Waters, as set forth in the petition, is an assignment of property, within the meaning of the act of assembly, declaring the effeet of assignments to trustees in contemplation of *insolvency ?” This question necessarily arises upon the demurrer of the defendant creditors.
The statute of 1853, referred to in the order, is in these words:
“ That all assignments of property in trust which shall be made by debtors to trustees, in contemplation of insolvency, with the design to prefer one or more creditors, to the exclusion of others, shall be held to inure to the benefit of all the creditors, in proportion to their respective demands; and such trusts shall be subject to the control of the courts, which may require security of the trustees for the faithful execution of the trusts, or remove them and appoint others, as justice may require.”
The allegations of the petition being admitted by the demurrer, we must regard the transfer of property made by Asa B. Waters to I. R. Waters, as having been made by a debtor, in contemplation of insolvency, with the design to prefer a portion of his creditors to the exclusion of others. But this is not enough to bring the case within the operation of the statute.
It is true that equality is generally the rule of equity. But, however equitable it may seem, that the assets of a failing debtor should be distributed pro rata among his creditors, it would be impracticable to enforce such a distribution in all cases, without taking away the necessary security, and so destroying confidence in the business transactions of every department of trade. At all events, the statute contemplates no such purpose. So far as it operates, it places all the creditors upon an equal footing. But it does not seek to prevent a debtor from applying his property to the payment in full of the bona fide claims of one or more creditors, though nothing be left for the satisfaction of other claims equally meritorious. One creditor may be amply secured 'by a mortgage, though the debtor have no means from which to pay or secure others. But there is one mode, in which a debtor is not permitted, in contemplation of insolvency, to exercise this conceded right of preference.
The sole object of the statute is to prevent his effecting this purpose by an assignment in trust. And this it does, not by making such assignments void, but by declaring that they “ shall *be *329 held to inure to the benefit of all the creditors, in proportion to their respective demands.”
In the case before us, it is not charged that the contract of sale set out in the petition, was merely colorable; no. secret trust is claimed to exist, nor any agreement touching the subject-matter, to have been made between the parties, other than the written contract. The question, then, is upon the proper construction and legal effect of this contract. Is it, though purporting on its face to be an absolute sale and conveyance of property, to be regarded, under the circumstances, as an assignment in trust, within the meaning of the statute ?
In Dickson et al. v. Rawson et al., 5 Ohio St. 218, it was well said by Chief Justice Eannoy: “ To bring the case within the operation of the statute, the conveyance must be in trust, and the person receiving the property thereby constituted a trustee for some one or more of the creditors of the debtor, to the exclusion of others. Whether it is so in trust, and the assignee or grantee such trustee, depends upon the question whether, by the terms of the instrument, or by necessary implication, ho is liable to account to the preferred creditor for the property in his hands, and for the manner in which he disposes of it. If a court of chancery, at the instance of the creditor, would compel him thus to account, the character of the transfer, and his own position, are thereby determined; and the statute then steps in and enlarges the trust, and makes it inure to the benefit of all the creditors, and distributes the fund to all, in proportion to their respective demands.”
The statute of 1853, now under consideration, is copied from the third section of the act of 1838 (1 Curwen, 424), and there is no good reason why the same construction should not be given in each of these acts, to the terms “ assignments of property in trust.” The act last referred to expressly declared the trusts therein spoken of, to be “subject to the control of chancery, as in other cases.” This provision is properly varied in the act of 1853, because the distinction between the forms of proceeding in chancery and at law was then abolished. But this does not change the character of the trusts referred to, which is expressed *in the same terms in both acts. They are trusts of which the jurisdiction and cognizance properly belong to courts of chancery.
Does, then, the written contract of the parties create a liability on the part of Israel E. Waters, to account to the preferred credit *330 ors,or either of them, for the property conveyed to him by Asa B. Waters, and for the manner in which he disposes of it? Would a court of chancery, at the instance of any or all of the preferred creditors, compel him thus to account?
The agreement purports, on its face, to be an absolute and unconditional sale of property, for which I. R. Waters, the vendee, agrees to pay to certain creditors of the vendor, the specified amounts in full, of their respective claims, forming in the aggregate a fixed and specified sum.
Now, in such a case, what remedy could a court of chancery afford to these prefei'red creditors, which they could not obtain at law ? An account could only become necessary for the purpose of ascertaining and fixing the extent of the vendee’s liability to them. But by the terms of the contract this liability is commensurate with their claims, which he has personally stipulated to pay in full. And that they could severally enforce this personal liability by actions at law, admits, we think, of no doubt. On this subject, the law is thus stated in 1 Chitty’s Pleadings, 5 : “ When a contract not under seal is made with. A to pay B a sum of money, B may maintain an action in his own name; but if the promise had been to pay A for the use of B, A is a trustee, and B, having no legal interest, can not sue.” In Starkie v. Starkie, Styles, 296, the case was this : “ The father gave goods to his son in consideration that, the son would pay the plaintiff twenty pounds.” Roll said : “ There is a promise in law made to the plaintiff, though there be not a promise in fact; there is a debt here, and assumpsit is good.”
The cases of Green v. Horn, Cumb. 219; Dutton v. Poole, 1 Vent. 318; Martin v. Hind, 2 Cowp. 443; and Whorewood v. Shaw, Yelv. 25; all affirm the same doctrine. So in Schemerhorn v. Vanderheyden, 1 Johns. 139, the court said: “ Where one person-makes a promise to another for *the benefit of a third person, that third person may maintain an action on such promise.”' And such is the settled law in this state. In Krumbaugh v. Kugler, 3 Ohio St. 549, the court say: “ If for a valuable consideration A promise B to pay C a sum of money, C may recover it, in an action of assumpsit against A.” And so in Thompson v. Thompson, 4 Ohio St. 353.
By the agreement in this case, then, the absolute legal relation of debtor and creditor was created between Israel R. Waters and each of the creditors whose claims he promised to pay; and upon his. *331 failure to make payment, they might severally recover their judgments at law against him, and might, by execution, subject to the-satisfaction of those judgments, not only the property which passed to him by the contract, but all his other property not exempt from execution. This they could not do in chancery if he were a mero trustee. In that case, their equitable rights would be limited to 'the-property which passed to him by the assignment, or its proceeds.
The remedy of the creditors being thus full and perfect at law, to what end could they invoke the aid of a court of chancery?' If the contract were assailed on the ground of fraud, for gross inadequacy of consideration ; for a secret trust; for the insolvent or-irresponsible character of the vendee, or for a combination to prevent the bona fide application of the debtor’s property in payment of his debts ; and were it sought to set the sale aside on the ground of such fraud, there can be no doubt that, for such a purpose, a court of chancery would take jurisdiction. But this petition presents no such case; nor does the statute of which the plaintiffs here-claim the benefit, contemplate the setting aside of conveyances as fraudulent and void. Under its provisions, the transfer in this case, if found to be an assignment in trust, must be declared valid, but held to inure to the benefit of all the creditors; and such is the relief asked by the plaintiffs.
There are no stipulations in the contract which give to any of the creditors of the vendor, or reserve for himself any interest in the property transferred to the vendee. It purports to be an absolute sale, and it is not claimed to have been otherwise intended by *the parties. The amount and payment of the purchase money arc subjected to no conditions. The agreement applies the whole of it to the payment of the bona fide debts of the vendor; and that such payment has been accordingly made, in good faith, by the vendee, is not denied, but is, at least partially, admitted by the petition, and is fully set up in the answer of Israel R. Waters.
Does this sale become an assignment in trust, merely because of the preference given to creditors in the appropriation of the purchase money ? Had the price of the property been paid to the vendor, no one can doubt his legal right to have made such preference in its distribution. We do not see how the fact that the purchase money was paid, not directly to Asa B. Waters, but to his bona fide' creditors, at his instance, can convert that which would otherwise-have been an absolute sale into an assignment in trust.
*332 Israel R. Waters was surety for his brother, Asa B., to the preferred creditors, in about nine-tenths of the whole price of the property sold. We think his right to secure himself by the purchase of property from his brother, by assuming the payment of those ■debts for which he thus stood bound as surety, can scarcely be questioned. 'The situation of the parties shows a reasonable motive for the transaction, consistent at least with legal honesty, and repels the suspicion'of fraud which might otherwise attach ; and the preference given by Asa B. Waters to creditors, in the distribution of the balance of the purchase money, being but a legal l’ight which he might exercise in any other mode than by an assignment in trust, will not authorize us to regard a tona fide sale as coming within the ■operation of the statute.
Without undertaking to review, in derail, the cases which have been held by our predecessors to fall within the statute, it may be safely said that none of them are similar to' the present case. In ■each of them that has not been overruled, the instrument which was held to be an assignment in trust gave to other creditors beside the assignees, or reversed for the assignor, an interest in the property transferred, or in its proceeds, and thus laid the foundation for chancery jurisdiction to compel an account. None of *themwas a case of absolute sale, in which the sum to be paid by the assignee was definitely fixed, without reference to the amount which he might realize from the property.
In each of them it will be found that the assignee held the property as mortgagee, or otherwise, in part at least, merely to secure •other creditors beside himself, or was to account for a residuum to the assignor. Such instruments might well be declared assignments in trust. But, in a case like the present, however much we •might desire to enforce equality of rights among creditors, we are ■not at liberty to accomplish this object by giving a construction to the statute which is wholly unwarranted by its terms.
The question reserved must, therefore, be answered in the negative.
Bartley, C. J., and .Swan, Brinkerhoee, and Sutliee, JJ., concurred.