COOLEDGE v. McCONE. See Case No. 3,186.
COOLEY (HALL v.). See Case No. 5,928.

## Case No. 3,184.
### COOLIDGE et al. v. CURTIS et al.
[1 Bond, 222;[1] 7 Am. Law Reg. 334.]

Circuit Court, S. D. Ohio. Feb. Term, 1859.

ASSIGNMENT FOR BENEFIT OF CREDITORS—STATUTORY CONSTRUCTION BY STATE COURT.

1. In Ohio, a failing debtor may prefer creditors by assignment or otherwise, if done under circumstances which repel the inference of a fraudulent purpose.

2. If the construction of a state statute has been settled by the decision of the highest court of the state, the courts of the United States uniformly adopt such construction.

3. The supreme court of Ohio have decided that the act of March 14, 1853, "declaring the effect of assignments to trustees, in contemplation of insolvency, and the statute of 1838, of the same import, do not affect assignments or transfers made for the sole benefit of the assignees or transferees; but if made trustees

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

for other parties, the statute applies, and the property is held for the equal benefit of all the creditors."

4. But no trust will be implied merely from the fact that an assignment or transfer has been made by an insolvent debtor to indemnify a surety for such debtor, if no more property has been assigned than was necessary for that purpose and the facts warrant the presumption that nothing was designed but the bona fide indemnity of the surety.

5. Although such surety may be liable to respond to the creditors not provided for, for any surplus after paying the debts for which he was bound, he is not a trustee within the contemplation of the statute referred to.

[In equity. Bill by Coolidge and Dubarrow against Nicholas G. Curtis and others.]

Worthington & Matthews and Thompson & Nesmith, for plaintiffs.

Fox & Fox, James Clark, and Thomas Milliken, for defendants.

LEAVITT, District Judge. The plaintiffs allege in their bill that the defendant, Nicholas G. Curtis, is indebted to them in the sum of $1,368, to recover which, a suit at law is now pending in this court, in which certain property, claimed by other parties, has been attached as the property of said Curtis. They also set forth that Curtis, in contemplation of insolvency, assigned and transferred to the defendants, Wilkinson Beatty, Joseph Curtis, Thomas Moore, and others, all his property for the purpose of preferring creditors in Ohio, to the exclusion of those residing in eastern cities. The object of the bill is to charge the persons just named as trustees of the property transferred to them, for the benefit of all the creditors of Curtis; and the prayer is, that a receiver may be appointed to take possession of the property, and hold the same subject to the further order of the court, and that, on the final hearing, the proceeds may be apportioned equally among all the creditors. The defendants, in their answer, admit the insolvency of N. G. Curtis, as averred in the bill, and allege that the sale or assignments of property or assets to them, was made in good faith to pay or secure debts justly due them, and indemnify them for liabilities incurred for said Curtis, by indorsements and other modes of suretyship. They deny any sale or assignment to them in trust, for the benefit of any other creditor; or that they received or hold property, as trustees, either expressly or by legal intendment. Referring to the bill, it will be seen the plaintiffs do not ask for the cancelment of the alleged assignments or transfers as illegal and void, on the ground of fraud; but they insist that they fall within the operation of the statute of Ohio, passed March 14, 1853, "declaring the effect of assignments to trustees, in contemplation of insolvency;" and that they inure to the equal benefit of all the creditors of Curtis. The important question in this case, therefore, is, whether the parties to whom the assignments or transfers

have been made by the debtor, are trustees within the meaning of the statute referred to.

There are three separate transactions stated in the bill, and insisted upon in the argument, as within the operation of the statute. I will first notice the sale of the stock of goods by N. G. Curtis to Beatty. The answers of the defendants, Curtis and Beatty, and the evidence on file, sufficiently show, that for several years prior to the autumn of 1857, Curtis had been engaged in the dry goods business, at Hamilton, in Butler county, Ohio. He had become greatly embarrassed in his pecuniary affairs. His paper had been protested and suits had been brought against him on claims which he was unable to meet. His friends and others in the community regarded him as insolvent, and it was apparent he could not continue his business. He was in possession of a stock of dry goods, nominally worth, at the invoice prices, about $31,000, and he had notes and book accounts amounting to about $20,000, but available for not more than half that sum. He had previously owned real estate worth from $6,000 to $8,000, which had been mortgaged for its entire value. His debts amounted to about $66,000, of which $30,000 was due to persons residing in Butler county, and $36,000 to creditors in New York and Philadelphia. He was indebted to Beatty in the sum of $4,453, and Beatty was liable for him, as indorser and otherwise, in the sum of about $2,650. Beatty was a citizen of Butler county, of large pecuniary means, and of respectable standing. On November 19, 1857, after a good deal of conference on the subject, Curtis agreed to sell his entire stock to Beatty, and a written agreement of sale was executed by the parties. This agreement purports in its terms to be an absolute and unconditional sale of the goods. It provides, among other things, that the goods shall be invoiced by three persons named in the writing, and that Beatty shall pay for them at the rate of sixty-six and two-third cents on the dollar, of the cost or invoice prices. At the invoice prices the stock amounted to $31,000; and at the rate agreed on, the sum to be paid by Beatty was about $20,666. He executed his notes for $16,666.66. These notes, at the request of the counsel of Curtis, after the sale and while the invoice was in progress, were given in sums to enable Curtis to transfer them to creditors, in payment, or as collateral security for debts. Though not stated in the written contract, it was the understanding of the parties, that Beatty should have a credit on the purchase to the amount of the debt due from Curtis; and this arrangement was carried into effect in giving the notes. It is in evidence that these notes were delivered to Curtis, and by him transferred to creditors, in some cases as absolute payment, in others as collateral security.

In his answer, which is sworn to, Beatty avers that the purchase of the goods by him was in good faith; that he paid the full

value for them; and that his sole object was to secure the debt due him, and obtain indemnity as security; and that at the time of the purchase he had no knowledge of any intention by Curtis to prefer a portion of his creditors. It is, perhaps, not material to notice, that before the invoice of the goods was completed, they were attached by process issued from this court, as the property of Curtis, and subsequently taken from the custody of the marshal by a writ of replevin from the court of common pleas of Butler county, and delivered to Beatty, who has since sold the entire stock. The transactions between N. G. Curtis and Joseph Curtis, referred to in the bill, are briefly these: Prior to the sale to Beatty, N. G. Curtis was indebted to Joseph Curtis, directly, by note and book account, in the sum of $568. Joseph Curtis was liable, as the indorser of N. G. Curtis, on paper held by the banking firm of Shaffer, Curtis & Potter—of which Joseph Curtis was a partner—in the sum of about $12,471; and he was also liable as the guarantor of other paper of N. G. Curtis, held by said banking house, to the amount of $4,982.-34; making an aggregate of indebtedness and liability, as surety, of $18,021. It also appears Joseph Curtis was contingently liable for N. G. Curtis, as surety on a bond to the treasurer of the school board of the city of Hamilton, and also on other bonds given by him in a fiduciary character. Immediately after the sale to Beatty, N. G. Curtis transferred several of the notes given for the goods to Joseph Curtis. These notes were payable at different times, from four months to three years, and amounted to $7,000, but with the rebatement of interest were worth only $6,340. In addition to this N. G. Curtis assigned to Joseph Curtis notes and book accounts amounting nominally to $8,352, but worth not exceeding the half that sum. The parties both swear that these transfers were made for the sole purpose of securing Joseph Curtis, and without any purpose, express or implied, that the latter was to hold the assets as a trustee, or for the benefit of N. G. Curtis, or any creditor but himself. In relation to the transfers to Thomas Moore, it appears that N. G. Curtis was indebted to him directly, in the sum of $500, and that Moore was liable as indorser for $1,718. Curtis transferred to Moore one of Beatty's notes for $1,440, due in three years from its date, without interest, and worth only $1,200, together with sundry small accounts, of the nominal amount of $1 000, but really not available for more than fifty per cent. of that sum. Curtis and Moore state in their answers, that these transfers were in good faith, and intended solely to indemnify Moore, and not in trust for any purpose. The bill also avers a transfer of a portion of his stock of goods by N. G. Curtis to Levi S. Curtis. It will not be necessary to notice this transaction or to decide whether fraud may not be implied in connection with it.

The sale has been annulled by the parties, and it is in evidence that the goods have been delivered by N. G. Curtis, in payment of bona fide debts.

The question arising on these facts is, whether the sale to Beatty, and the transfers to Joseph Curtis and Thomas Moore, or any of them, import assignments in trust to prefer creditors within the meaning of the act of March, 1853. The statute provides "that all assignments of property in trust, which shall be made by debtors to trustees, in contemplation of insolvency, with the design to prefer one or more creditors, to the exclusion of others, shall be held to inure to the benefit of all the creditors in proportion to their respective demands; and such trusts shall be subject to the control of the courts, which may require security of the trustees for the faithful execution of the trusts, or remove them and appoint others, as justice may require." A statute, identical in its terms with that just quoted, with one unessential exception, was passed by the legislature of Ohio in 1838, and was in force until the act of 1853 took effect. Under these statutes a number of cases have been before the supreme court of the state, and their purpose and meaning seem now to be well settled. In accordance with the approved and established practice of the federal courts, affirmed by repeated decisions of the supreme court of the United States, this court, in giving a construction to the statute under consideration, will be guided by the decisions of the supreme court of the state. The cases which have arisen under the statute have been referred to in the argument of counsel, and such of them as bear upon the question before the court will be noticed. Before referring to these cases, it may be remarked that prior to the passage of the act of 1838, declaring the effect of assignment in trust, by a failing debtor, to prefer creditors, it had been held by the supreme court of the state that such debtor could lawfully prefer a creditor, if the preference was in good faith, and under circumstances repelling the presumption of a fraudulent purpose; and since the enactment of that law, the validity of such a preference has been affirmed, unless made through the intervention of a trustee, in which case, under the statute, the assignment is not void, but inures to the equal benefit of all the creditors. It is, therefore, settled law in Ohio, that a debtor, in a state of insolvency, may pay a creditor his entire debt, although such payment may operate to the injury of other creditors; and it can make no difference whether the payment is made in money or in property. A debtor may also, indirectly, give preference to a creditor by confessing a judgment, and thus enabling the creditor to obtain a priority, by the levy of an execution on the property of the debtor. It is equally clear that the debtor may dispose of his property by an absolute sale, if no fraud is intended, and

pay the proceeds to some of his creditors, in exclusion of others. In these cases, in the contemplation of law, the creditor is entitled to the benefits resulting from his diligence. It is not clear of doubt whether this right of preference, even with the limitation stated, can be vindicated either on the basis of strict morality or commercial expediency. A pro rata division of the proceeds of an insolvent debtor's property among all his creditors, under all circumstances, and an unconditional prohibition of all preferences from the actual occurrence of insolvency, is more accordant with all our views of justice and fair dealing. But the law on this subject is now too firmly settled in Ohio, by the adjudications of her courts, to be changed, except by positive legislative interposition.

In the case before the court, there is no reason to doubt that, in the sale to Beatty, and in the transfer of assets to Joseph Curtis and Thomas Moore, the debtor, with a knowledge of his insolvency, designed to provide for creditors residing in Butler county, leaving his eastern creditors to share pro rata whatever residuum there might be. The evidence is clear that he made declarations, before the sale to Beatty, of such a purpose; and, especially, that he intended to secure those who had become his sureties. Beatty, in his answer, denies that, at the time he purchased the stock of goods, he had any knowledge of Curtis' intention to prefer his home creditors. It is not material to inquire, in the decision of the questions arising in this case, whether Beatty, or the other parties to whom transfers or assignments were made, were cognizant of such a purpose. If the insolvent debtor could lawfully sell or transfer his property, intending to prefer certain creditors, the knowledge of such intention, by the parties preferred, can not affect the question whether the transactions are within the operation of the statute. The legal right to prefer a creditor, to whom the insolvent debtor is directly indebted, is not denied by the counsel for the plaintiffs, but they insist, if property is assigned to indemnify against loss as a surety for such debtor, the assignee holds the property in trust for the creditor for whom he is surety, and may be called on to account in equity for the property assigned; and, therefore, that such assignment falls within the statute by necessary implication. In the case before the court, there is no claim that there was an express trust in the sale to Beatty, or in the other transfers made by Curtis. If, therefore, a trust can be predicated of the facts in proof, it must be implied, and does not result from the patent acts of the parties. And this presents the question, whether a trust can be implied from the fact that the sale and transfers of property were designed, in part, for the indemnity of sureties. The decisions of the supreme court of Ohio uniformly sustain the principle that, under the statute, an assignment or transfer of property, by a failing

debtor, intended to prefer certain creditors, is not within its intention or scope, unless such preference is to be effected through the agency of a trustee. But, in determining whether a trust is created, within the meaning of the statute, that court holds that a strict construction is not to be given to the assignment or transfer, and that, without regard to form, the nature and character of the transaction must have the controlling influence. Thus, in the case of Harkrader v. Leiby, 4 Ohio St. 602, the court say: "After a very careful examination of the subject in all its bearings, we are unanimously of the opinion that our statute requires us to hold, that when any valuable interest of the insolvent debtor is transferred by any species of conveyance, binding the recipient, either expressly or by necessary implication, to account in chancery, to any creditor of the assignor, the statute enlarges the trust, and makes it inure to the benefit of all his creditors, and distributes the fund to all, in proportion to their respective demands." And in the same case the court say: "To bring a case within the operation of the law, there must be a transfer or conveyance of property, or some valuable interest belonging to the insolvent debtor, in view of his insolvency, to be held by the person taking it, for the benefit of some one or more of the creditors of the debtor, other than himself." The same principle has been substantially affirmed in other cases, to which it is not necessary specially to refer.

It is now proper to inquire, whether the several transactions, under consideration in this case, or any of them, are within the principle thus laid down by the supreme court of Ohio. And a reference to the cases decided by that court leads to the conclusion, not only that a failing debtor may indemnify a surety by transferring property to him, but that such a transfer does not raise a trust by implication, or necessarily impose an obligation on the transferee, to account to other creditors for the property transferred. The case of Atkinson v. Tomlinson, 1 Ohio St. 237, seems to be in point on this question. In that case, an insolvent debtor assigned his entire property to two persons, to indemnify them as sureties. The property so assigned was sold by the sureties, and the proceeds were applied in payment of the debts for which they were liable. Other creditors filed their bill, charging fraud in the assignment, and praying for a pro rata distribution of the proceeds of the property. The court held the assignment to be valid. In the conclusion of their opinion they say: "Now, in the present case, the defendants were the sureties of Tomlinson; they took an assignment of about enough property to pay off their liabilities for him; and although they showed themselves very anxious to obtain the security, as all men would, under similar circumstances, yet securing themselves appears to have been their sole object; and we think

they had a legal right to do it." In the case of Bloom v. Noggle, 4 Ohio St. 56, the court say: "It has been fully settled by repeated decisions of this court that a creditor of an insolvent debtor, or one having assumed liabilities for him as surety, may lawfully take from him a mortgage to secure such debt, or save harmless from such liability, and as the reward of his diligence, will be protected in the priority thus obtained;" and in the case of Harkrader v. Leiby, before cited, the court say: "The statute does not affect a mortgage given by an insolvent debtor to secure the debt of one of his creditors, or to indemnify him against a liability, by indorsement or otherwise, assumed for the benefit of the debtor, although it may have the effect to prefer such creditor." From these and other cases that might be referred to, the principle seems well settled by the decisions of the supreme court of Ohio, that a mortgage or other transfer of property may be given by a failing debtor, not only to secure a debt due by such debtor, but also to indemnify a surety; and it is most obvious, that if the right to prefer a creditor has any foundation in justice, it should be extended to the case of a surety. It is not only a popular principle, but one which accords with the most obvious dictates of honor, that a surety of a failing debtor occupies a more meritorious position than any other creditor, and has a moral claim to indemnity superior to that of one who has become a creditor in the ordinary business transactions of life. Hence, it is an established maxim that sureties are favorites with courts of equity.

It is insisted, however, by the counsel for the plaintiffs, that the cases in the supreme court of Ohio, to which he refers, sustain the doctrine of an implied trust in all cases where a conveyance or transfer of property is made by an insolvent debtor, to indemnify a surety, and that the surety is liable to account for the proceeds of the property as a trustee; and, if so liable, the case comes within the statute. The cases relied on do not seem to sustain this position to the extent claimed. In those cases the court adjudged the conveyance or assignment to be within the statute, not because preferences were made to sureties, but because there was an express trust for the benefit of some creditor other than the grantee or assignee. Thus, in the case of Harkrader v. Leiby, the mortgage was held to be an assignment in trust to prefer creditors, because it was given for the benefit of persons who were not mortgagees, and that, as to them, there was a trust. The entire opinion of the court leaves no doubt, that if the mortgage had been given for the indemnity of the mortgagees only, as sureties of the debtor, the transaction would not be brought within the operation of the statute. The case of Dickson v. Rawson, 5 Ohio St. 224, is relied on as sustaining the implication of a trust in the sale to Beatty, and the transfers to Joseph Curtis and Thomas Moore. But in the case referred to, the insolvent debtors assigned their property to some of their creditors, not only to secure them, but in trust that another person not named as an assignee, a surety of the debtor, should be indemnified for his liability. This was clearly a trust within the meaning of the statute; but there is no intimation in the opinion of the court, that a trust would be implied if the assignment had been solely for the benefit or security of the assignees. The judgment of the court was based on the fact that there was an express trust in favor of a person who was not an assignee. The court say, referring to the statute under consideration, "It does not in any way affect conveyances or mortgages made by a failing debtor to his creditors for the purpose of paying or securing his debts; but it does control every transfer or conveyance of property, whether by mortgage or otherwise, made by an insolvent debtor, in view of his insolvency, to be held by the person taking it for the benefit of some one or more of the creditors of the debtor, to the exclusion of others. To bring the case within the operation of the statute, the conveyance must be in trust, and the person receiving the property thereby constituted a trustee for some one or more of the creditors of the debtor, to the exclusion of others." In this opinion of the court there is no intimation of a doubt as to the correctness of the principles decided in previous cases, involving the construction of the statute. It is, in fact, an affirmance of the decisions in those cases, and the court refer to them, by name, as "carefully considered cases." The last case before the supreme court of Ohio is that of Bagaley v. Waters, 7 Ohio St. 359. The material facts were, that a merchant, in failing circumstances, sold and transferred his stock of goods, notes, and book accounts, and also his real estate, amounting to about $30,000, being the principal part of his property, to a person who, with others, was liable for him to the amount of about $20,000, and who assumed the payment of the debts for which he was liable as surety, and also other debts which were specified in the written agreement between the parties. The creditors not provided for in this arrangement brought suit to charge the assignee, as a trustee, under the act of 1853. The supreme court held that the statute does not prohibit a failing debtor from applying his property or means, to the payment in full of a part of his creditors, though nothing should be left for others equally meritorious. They say, "The sole object of the statute is to prevent his effecting this purpose by an assignment in trust;" and they hold, as there was no proof in conflict with the conclusion, that the agreement was what it purports to be, an absolute and unconditional sale of the property, in consideration of the promise of the vendee to pay certain debts, for a part of which he was surety, no trust to prefer creditors could be

implied, and that the assignment was not within the statute.

The case just referred to, in some of its aspects, is similar to that before the court, and would seem to be conclusive on the question now to be decided. The assignment in that case was made for the sole purpose of indemnifying a surety, who, it would seem, in addition to his legal liability to pay the debts, as surety, had expressly assumed their payment. The court held, that although the assignee thus made himself responsible for those debts to the creditors, and would be bound to apply the proceeds of the property assigned or sold for that purpose, it was not an assignment in trust, as contemplated by the statute. The facts in relation to the several transactions charged in the bill, as within the act of 1853, have been already stated. As to the stock of goods, the evidence leaves no room for a doubt that there was a positive, unconditional sale to Beatty, exclusively for his benefit and indemnity as a creditor of and a surety for Curtis. The goods were sold at their full value—in the opinion of several witnesses, for more than they were worth—and the notes given for the purchase were transferred by Curtis, with the knowledge and consent of Beatty, to creditors, either in actual payment of debts, or as collateral security. It is a fact, not controverted, that Beatty has the ability to pay, and, without doubt, will promptly pay these notes as they mature. It would seem clear, under the authorities that have been cited, that Curtis had the legal right to sell this property, with the purpose of preferring certain creditors, and that Beatty, with a view to his own security, had a right to purchase. In paying for the goods, he retained so much as was deemed necessary to pay the debt due from Curtis; and it was also a part of the arrangement that he should be indemnified to the extent of his suretyship for him. It would seem, however, from the evidence, that the difference between the value of the goods as appraised, and the notes given by Beatty, was something less than the actual indebtedness of Curtis to him; and hence there is no ground for an inference that there can be a residuum in his hands, for which he can be held liable to account to the creditors who are not provided for. There is, therefore, nothing in this transaction from which a trust can be implied, within the contemplation of the statute, or which can be a basis for a proceeding in equity, to charge Beatty as an assignee. In reference to the transfers to Joseph Curtis and Thomas Moore, it would seem clear that within the principles of the decisions of the supreme court of Ohio, they also are protected from the operation of the act of 1853. They were separately creditors of the insolvent debtor, and they were liable for him as sureties. To pay the debts due them, and as an indemnity for their suretyship, notes and other assets were assigned to them respec-

tively, less in amount in both cases than the sums for which they were liable. There is no evidence contradicting or disproving the allegations of their answers, that their sole object in this arrangement was to protect themselves from their liability, and both deny that there was any other purpose in view.

To bring an assignment within the operation of a statute, there must be, in the words of the statute, "a design to prefer one or more creditors to the exclusion of others;" and this purpose must be accomplished through the agency of a trustee. It is true, as already stated, that the insolvent Curtis intended to prefer some of his creditors, but such intention does not bring the transactions within the statute. The pertinent inquiry is, has he assigned property in trust for this purpose? In the case of Bagaley v. Waters, before noticed, the court, in reference to the cases that had been before the court, involving the construction of the statute, say: "In each of them that has not been overruled, the instrument which was held to be an assignment in trust, gave to other creditors, besides the assignees, or reserved for the assignor, an interest in the property transferred, or in its proceeds, and thus laid the foundation for chancery jurisdiction, to compel an account." And again: "In each of them, it will be found that the assignee held the property as mortgagee, or, otherwise, in part, at least, merely to secure other creditors beside himself, or was to account for a residuum to the assignor. Such instruments might well be declared assignments in trust." And in the case of Doremus v. O'Harra, 1 Ohio St. 45, the court held, that "the statute of 1838, relating to assignments of the property of a failing debtor for the purpose of preferring creditors, does not embrace all cases of assignments made by such debtor, but refers only to those cases where the assignee stands in the character of a trustee, other than his merely receiving a conveyance to secure his own claim."

These authorities seem clearly to warrant the conclusion that no one of the several transactions in question in this case falls within the statute. In the sale to Beatty, and the transfers to Joseph Curtis and Thomas Moore, no trust can be implied in favor of any creditors other than the vendee or the transferees. The cases referred to establish the doctrine that, to the extent of their liability as sureties, they had a legal right to obtain indemnity by any species of assignment or transfer, which, in its benefits, was limited to them, and made no provision for a preference in behalf of any other creditor. This right being conceded, they can not be viewed as trustees under the statute. As sureties, the legal obligation to pay the creditors, to whom they stood in that relation, upon the failure or inability of their principal to make payment, was complete, and could not be affected by any assignment for

their indemnity. The debtor was hopeless'y insolvent; and their liability to pay the debts for which they were surety, rested upon no contingency. Their entire property—not only that assigned to them, but all they then owned, or might subsequently acquire—was liable for the payment of these debts. These considerations, in connection with the fact that no more property was placed in their hands than was necessary for their indemnity, strongly negative the existence of an implied trust, and repel the conclusion that they are chargeable, in equity or otherwise, as trustees under the statute. It may be conceded that if, after applying the proceeds of the property transferred to the sureties, there should be a surplus in their hands, the creditors not paid or provided for would be entitled to the benefit of such surplus. But their claim would not rest on the basis of an assignment in trust to prefer creditors, within the meaning of the statute, but upon the legal and equitable principle that one who holds money to which another is entitled, may be sued for its recovery. In the case of Atkinson v. Tomlinson, 1 Ohio St. 243, the court decide that a liability to account for a surplus, where property has been assigned or conveyed by a failing debtor, to pay a debt or indemnify a surety, does not necessarily raise a trust, within the scope and meaning of the statute. In illustration of the views of the supreme court on this point, they refer to the case of a mortgage given by such debtor, and remark in these words: "Now, it may be said that a mortgagee is, in some respects, a trustee; but this arises merely as an incident to his relation as mortgagee, and is not the kind of trustee designated in the statute."

The views thus indicated relieve the court from the necessity of expressing an opinion on the point made by the counsel for defendants, that a decree can not be rendered for the plaintiff, for the reason that all the parties in interest are not before the court. For the same reason, it is unnecessary to decide whether the proceedings in replevin, in reference to the goods purchased by Beatty, are an estoppel to the plaintiffs to the assertion of the claim set up in this bill. The bill is dismissed.