Brinkerhoff, C. J.
This being an action in the nature of an action of trespass for unlawfully taking and converting property claimed by the plaintiff below under the assignment set forth in the bill of exceptions, the defendants below were under the necessity of claiming and maintaining that said assignment was utterly void and of no effect, and passed to the assignee, as against other creditors, no title whatsoever; and hence they asked the court to *444 ■ charge the-jury, that “the reservation by the son, *in the sale or transfer of the property to his father,” of the surplus remaining after the payment of the debts for which the father was bound as surety, “ rendered the sale or transfer void.” This'charge the court below refused to give, thereby, as well as subséquently in express terms, holding that the assignment was not, on its face, and as a matter of law, fraudulent and void. In thus holding, did the court below err ? And if it did, what is the effect of the error on the case before us ?
In the case of Hoffman, Burneston & Co. v. Mackall et al., 5 Ohio St. 134, 135, the judge delivering the opinion of the court, introduces, with seeming approval, the doctrine laid down in Goodrich v. Downs, 6 Hill, 438, and Barney v. Griffin, 2 Comst. 365, “ that there are certain provisions in the terms of an assignment or deed of trust, made in contemplation of insolvency, which are per se fraudulent ; ” and that, among these, is “ the reservation of the surplus after paying certain specified debts, leaving other debts unpaid.” This opinion, as is evident from the note appended to it, was drawn up in vacation, more than a year after the case had been considered by the court; the doctrine thus seemingly approved was not necessary to a determination of the case, and the correctness of which may be subject to serious.question.
These remarks will apply also, to some extent, to the observations of the judge delivering the opinion of the court in Dickson et al v. Rawson, 5 Ohio St. 224. As it seems to us that, while our statutes “ declaring the effect of assignments to trustees, in contemplation of insolvency;” continue in force, there can be no case in which the doctrine of these New York cases can possibly apply, why should its correctness be either discussed or determined by this court? It will be time enough to do either, when occasion for its application shall arise.
This reservation of the surplus remaining after the payment of the debts secured by the terms of the assignment, is obviously nothing more than a stipulation for the performance *of a duty, which the law would recognize and enforce without such stipulation; and how it can become a conclusive badge of fraud, is, on principle, difficult to perceive; and the doctrine of these New York cases seems to me to rest on a somewhat forced application of the letter of the statute of frauds, in mistake or disregard of their proper object and intent.
*445 A part of the doctrine of these New York cases, and essential to their consistency with themselves, is that a reservation by the assignor to himself of the surplus after the payment of debts less than his whole indebtedness, constitutes it an assignment in trust for the benefit of the assignor, within the statute of frauds. Now, granting for the sake of the argument the doctrine of these New York cases to their full extent, what then ? It follows, to be sure, that the court below may have erred in its refusal to charge the jury, as requested by the defendants below ; but then it also follows, that this assignment comes within the provisions of the act of March 14, 1853, !< declaring the effect of assignments to trustees in contemplation of insolvency,” and which is as follows (3 Curwen, 2239):
“ That all assignments of property in trust; which shall be made by debtors to trustees in contemplation of insolvency, with the design to prefer one or more creditors to the exclusion of others, shall be held to inure to the benefit of all the creditors, in proportion to their respective demands ; and such trusts shall be subject to the control of the courts, which may require security of the trustees for the faithful execution of the trusts, or remove them and appoint others, as justice may require.”
' That this assignment was made ip contemplation of insolvency, is clear from all the testimony in the case; that it was made to prefer a creditor, to wit, the assignee, is apparent from the instrument of assignment itself; and if, as held in the New York cases before cited, the reservation of the surplus after the preferred debts are paid, is ^conclusive as to its being a trust to the use of the
assignor, under the statute of frauds, then every requisite necessary to bring the assignment within the statute of 1853 is supplied. The language of this act is, “ all assignments,” etc.; and whether they are fraudulent or bona fide, so that they otherwise come within the purview of the act, makes no difference. This statute avoids nothing. It simply takes up the class of assignments embraced within its provisions, makes them binding and operative, so far as to pass title to the assignee, whether they be fraudulent- or not, and causes them to inure “to the benefit of all the creditors, in proportion to their respective demands.” It, in effect, supersedes and, by implication, repeals the statute of frauds pro tanto. And so our courts have held. Harshman v. Lowe, 9 Ohio, 92. On this supposition, it follows, therefore, that, if the court below erred in refusing to charge the jury as requested, it was an error which could not oper *446 ate to the prejudice of the defendants below; for if the assignment was within the operation of the act above quoted, it inured “to the benefit of all the creditors,” and could not be by the defendants below rightfully treated, aS they claimed to treat it, as null and void. In short, if the assignment was fraudulent per se, in virtue of provisions apparent on its face, it came within the operation of the act of 1853, which, so far from avoiding it, gave it validity for its own purposes and policy; if not fraudulent per se, there was no error in the charge, or refusal to charge on this branch of the case.
As to the question of fraud in fact — whether the assignments was made or received with the intent to defraud creditors, or not — that question, so far as appears from the bill of exceptions, was fairly enough left to the jury; and it seems to us that there was not such a want of evidence to support the verdict as would authorize us to set it aside.
It may be said that the court ought to have told the jury that, in inquiring into the question of intent, they were at liberty to look into the terms and provisions of *the assignment itself, as well as all the other circumstances of the case. To this it seems to me sufficient to reply: 1. No request appears to have been made to the court thus to charge; and,( 2. The bill of exceptions does not purport to set out the whole, or general charge of the court, but such portions only as counsel thought proper to except to; and non constat, from aught that appears in the bill of exceptions, but that all proper observations on this subject were made by the court. Error must be made apparent on the record; it will not bo presumed.

Judgment affirmed.

Scott, Stjtliff, Peck, and Gholson, JJ., concurred.