Minsharr, J.
The mortgage from Edward P. Allen to Emerson, having been made in contemplation of insolvency, the question is, whether, within the meaning of section 6348, Revised Statutes, it should be held to be an assignment to Emerson in trust to secure the claim of the bank as well as his own liability as surety of the Allens. .We think that such was its character, and that the court erred in dismissing the petition as amended. That an assignment in trust for the benefit of one or more creditors of an insolvent debtor may *129 be made b}' the execution of a mortgage, is settled by the decisions of this court. Harkrader v. Leiby, 4 Ohio St. 602; Bloom v. Noggle, Id. 45, 56; Hyde v. Olds, 12 Ohio St. 591. A creditor may secure himself by taking a mortgage ; but in doing so he must deal with an eye single to his own interests; if he attempts to extend the lien beyond the necessity of his own indemnity, and secure the debt of any other creditor, the mortgage is in substance and legal effect an assignment within the meaning of §6343, Revised Statutes, and the mortgagee being a trustee for such other creditors, under the statute becomes a trustee for all the creditors of the mortgagor. Bloom v. Noggle, supra. Whether a grantee or transferee of' any kind is to be regarded as such trustee “depends,” as said in Dickson v. Rawson, 5 Ohio St. 218, 222, “upon the question whether, by the terms of the instrument or by necessary implication, he is liable to account to the preferred creditor for the property in his hands, and for the manner in which he disposes of it. If a court of chancery, at the instance of the creditor, would compel him thus to account, the character of the transfer, and his own position, are thereby determined; and the statute then steps in and enlarges the trust, and makes it inure to the benefit of all the creditors, and distributes the fund to all, in proportion to their respective demands.”
What then was the character of the mortgage from Allen to Emerson ? On its face it secured an absolute obligation to pay two notes, one of 8,000, and the other of 10,500 dollars. The court, however, found that the consideration for the 8,000 dollar note was the promise of Emerson to pay an indebtedness of the maker in that sum to the Rowes, and for which Emerson was surety; and that the consideration for the $10,500 dollar note was the promise of Emerson to pay an indebtedness of the maker in that sum to the bank, and for which he was in no way previously liable. Hence, aside from the promise of Emerson to pay the Rowes and the bank the amounts named, there was no consideration for the mortgage, and it would have been void as against creditors, under §6344, Revised Statutes, and the court would have been required to set it aside, as prayed for by *130 the plaintiff in his original petition. The promise, however, of the mortgagee to pay these debts furnished a sufficient consideration for the promise .of the mortgagor, evidenced by the notes, and took the mortgage out of the operation of the section just referred to. But what was the nature of this promise? Allen was not actually indebted to Emerson in any sum, and would not be until Emerson should perform his promise by paying Allen’s indebtedness to the creditors named. It is therefore evident that the promise of Allen, evidenced by the notes, was a promise of repayment to Emerson of the amounts he should pay for Allen on his indebtedness to the creditors named; and that the mortgage was designed to secure the performance of this promise of repayment. Without making these, payments, Emerson would have had no right in equity to foreclose the mortgage. So that it was simply a mortgage of indemnity given Emerson to secure him in the performance of his promise to pay certain creditors of Allen; and, as we shall show, inured in equity to the benefit, not only of the Rowes to whom he was a debtor, as the surety of Allen by an express promise, but, also, to the bank, since by promising to pay its claim in consideration of the execution of the mortgage, the promise became obligatory upon the acceptance of the mortgage, and the bank had the right to adopt the promise and enforce it to the extent it would, had the promise been made directly to it. Thompson v. Thompson, 4 Ohio St. 333; Emmitt v. Brophy, 42 Id. 82. In other words, upon the acceptance of the mortgage, Emerson, by reason of his promise to pay these creditors, stood in the relation of a surety for the Allens, not only upon their indebtedness to the Rowes, but also to the bank.
It is a well settled rule in equity, that where a surety for his own indemnity takes a collateral securtiy from his principal, such security is regarded in equity as a trust for the better security of the debt, and chancery will compel the execution of the trust for the benefit of the creditor. Story’s Eq. §502, and cases cited; Vail v. Foster, 4 N. Y. 312; Kelly v. Herrick. 131 Mass. 373; Green v. Dodge, 6 Ohio 80: Fastman v. Foster, 8 Met. 19; Paris v. Hulett, *131 26 Vt. 308; Chamberlain v. Railroad, Co., 92 U. S. 299; 306 ; Heath v. Hand, 1 Paige, 329.
The rule is not limited, but applies as well to • one standing in the situation of a surety, as to one standing strictly and formally in that relation. Thus in Curtis v. Tyler, 9 Paige, 432, where the owner of a mortgage had assigned the same and covenanted with the assignee that it was due and ■collectible, and subsequently took the bond of a third person as a further security for the payment of the amount due upon such mortgage, it was held by Chancellor War-worth, that the assignee of the mortgage was, in equity, entitled to the collateral bond for the security of the mortgage debt, on the principle, that where a surety or one standing in the situation of a surety for the payment of a debt, receives a security for his indemnity, the principal creditor is in equity entitled to the full benefit of that security; and it makes no difference, as he said, that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence. And he cited the case of Ex parte Perject, Mont. Bank. Rep. 25, w7here it was decided by the vice-chancellor of England that the endorser of a bill of exchange had an equitable claim to property deposited with the drawee as security against the payment of the bills accepted by him. So in Kramer & Rahm’s Appeal, 37 Penna. St. 71, where one King residing in Pittsburgh, agreed to accept paper to be drawn on him by one Baker, in consideration of pig metal to be shipped him, for his better security, took a judgment-note on which a judgment was obtained and a levy made, from which money was realized by a sale of the property, it was decided that the holders of the acceptances were entitled to the benefit of the security taken by King, although at the time of taking the acceptances they had no knowledge of the existence of the security; citing and relying on Curtis v. Tyler, and emphasizing the fact that the rule as there stated and applied, includes all standing in the situation of surety, and not merely such as technically occupy that relation. Thompson, J., in delivering the opinion, said, “The authorities place the principle upon the *132 ground that as.the security is a trust created for the better securing of the debt, it attaches to it, and hence it is that it may be made available by the creditor, although unknown to him at the time of the purchase of the security, for which it may have been given as an indemnity. The effect of such a transaction is the placing of means in the hands of the surety by the principal debtor to meet liability on account of his contract of suretyship. It is consequently a trust for that specific purpose, and equity will control the legal title to it in the hands of the surety, so that it may be applied to the object intended, viz., the payment of the debt to the holder.” And so in Grant v. Ludlow's Adm’r, 8 Ohio St. 1, 20, it was held, upon the same principle, that where an agent, employed by his principal, to take security from a debtor of the principal, so negligently conducted himself in taking the securit}' as to become liable to the principal, and thereupon took a mortgage from the debtor to indemnify himself against such liability, such mortgage inured in equity to the benefit of the principal, and could be enforced by him against a subsequent mortgagee of the same propertjc
These cases and the principle upon which they proceed, make it clear, as we think, that Emerson in accepting the mortgage as indemnity against loss in the performance of his promise to pay the bank, became, within the meaning of § 6343, Revised Statutes, an assignee of the property covered by the mortgage in trust for the benefit of the bank; and, as a consequence of the provisions of that section, held it in trust for all the creditors of Allen according to the amount of their respective demands. The fact that a surety has the right to take indemnity by way of mortgage from his principal, is of no avail, so far-as he assumes the indebtedness to the bank. For this indebtedness he was not previously liable as surety; and, as said by the judge delivering the opinion in Bloom v. Noggle, the statute cannot be evaded by assuming a liability as surety for the insolvent debtor, as part of the transaction by which the mortgage is given. He might safely have secured his liability for Allen to the Rowes; but, having gone beyond this, and accepted *133 a mortgage intended to secure another creditor, he became by force of the statute, a trustee for all, and in respect to all the property covered by the mortgage. Harkrader v. Leiby, 4 Ohio St., 602, 613. And his liability in this regard is to be determined not by subsequent events, but by the nature of the transfer at the time it was made. If by its terms, or necessary implication, it made him liable to account to another creditor of the debtor, it is an assignment in trust within the meaning of the statute. Dickson v. Rawson, 5 Ohio St., 218, 224.
We are, however, confronted with the case of Bagaley & Co. v. Waters, 7 Ohio St., 359. But that case is plainly distinguishable from the case before us. There, Asa B. Waters being insolvent, made an absolute sale of certain property to his brother, Israel I. Waters, in consideration of his agreement to pay certain named creditors of the grantor. The decision was placed on the ground that the sale was an absolute one, conferring on the purchaser the right to dispose of the property as his own, subject to no trust whatever in favor of the preferred creditors. In this view of the case it is hard to find any objection to the decision. It was upon this ground that the judge, delivering the opinion, distinguished the case from the previous decisions of the court on the same subject. Referring to these cases, he said: “ In each of them it will be found that the assignee held the property as mortgagee, or otherwise, in part at least, merely to secure other creditors besides himself, or was to account for a residuum to the assignor. Such instruments might well be declared assignments in trust.” In the case before us there was not an absolute sale. The debtor executed two notes and secured them by mortgage. The only consideration, as we have shown, for these notes, was the promise of the mortgagee to pay the Rowes and the bank, and the court found as a matter of fact, that, “ The purpose in the execution of said two notes and mortgage was to provide for the payment of said debts to said Rowe and said bank.” We have shown, if any thing can be established by reason and authority, that a security so taken, inures to the benefit of the creditor, and that he may *134 hold the person receving it as a trustee, bound in equity to account for it. But, in addition to this, the debtor retained an interest in the property. He still remained liable on his indebtedness to the Rowes and the bank, and hence, as mortgagor, had the right to have the property applied to the payment of these creditors, in exoneration of himself; and, if not so applied, had the right to have the mortgage delivered up and cancelled; and, of this right, the creditors whose debts were to be paid, could have availed themselves, on the ground that the property was subject to a trust in favor of their debtor, which in equity inured to their use. So that, viewed in any light, Emerson, by accepting the mortgage, became, under the terms of the agreement, a trustee of the property for the creditors he promised to pay, which the statute enlarges into a trust for the benefit of all the creditors of the insolvent.
Judgment reversed, and judgment for the plaintiff in error; and catise remanded to the court of common pleas to carry this judgment into execution.
*135 CASES ARGUED AND DETERMINED IN THE SUPREME COURT OF OHIO, .JANUARY TERM, 1893. Hon. JOSEPH P. BRADBURY, Chief Justice. Hon. ERANKLIN J. DICKMAN, j Hon. THAD. A. MINSHALL, Hon. MARSHALL J. WILLIAMS, [ Judges. Hon. JACOB E. BURKET, Hon. WILLIAM T. SPEAR, J