Hitchcock, J.
This case involves principles which are important, and upon its correct decision must depend in some measure the security of titles within the Yirginia military district, which at the best, have been heretofore considered as somewhat precarious, and have been, and still continue to be, subjected to much litigation ; and we should extremely regret to make any decision which could be considered as an innovation upon any of the rules- *168 which have been heretofore established with respect to these titles. And we have examined this case with more than ordinary care, in consequence of the confidence expressed by learned counsel, that the court upon the circuit had entirely mistaken the law of the case.
So far as respects the first reason assigned for a new trial, there can be no pretense that it is well founded. If the court were right with respect to the law of the case, the verdict of the jury was in conformity with the evidence, as applicable to that law. The evidence was conclusive as to the location of the south, or southerly line of Perkins’ survey, being proven by the testimony of the surveyor who m'ade the survey, and other testimony, and it was not even pretended that the defendant was in possession of any land south of this line.
The only question then is, whether the court was mistaken as to the law of the case, and committed an error in the instructions 168] *given to the jury. The point of law, as given to the jury¡ is this: The survey and patent under which the plaintiff claims title, calling for a corner’of Perkins, as the beginning corner, and calling for the line of Perkins, as one of the boundaries, must be controlled by these calls. And even admitting that the surveyor in executing the survey did commence at a corner made by himself, which was not a corner of Perkins, and did survey a line which is not in conformity with the line of Perkins, the call, in ■the survey and patent for Perkins’ corner and line, can not be rejected so as to give the plaintiff a part of Perkins' land.
It will be seen from the evidence in the case, that although the entries were both made on the same day, yet that of Perkins was ¡first made, and upon the entry of .Perkins the other was dependent, showing conclusively that .by this latter entry the locator did mot intend to interfere with that of Perkins. And the surveyor •in surveying this latter entry, if done before the entry of Perkins was surveyed, would be bound so to survey as not to interfere with .Perkins’ entry, but to leave him his full quantity of land. Such I say would have been the duty of the surveyor; and we are told by the counsel for the plaintiff, that the surveyor shall be presumed ■to have done his duty. The entry of Bartlet was first surveyed, ■and it is manifest that the surveyor intended, at least, so far to perform his duty as not to interfere with the rights of Perkins, for •he calls to begin at the southeast corner of Perkins’ survey, and *169 to run westerly with Perkins’ line. He did not, as would appear from the certificate of survey, make any now corner in this part of the survey, nor run any new line as a boundary, but adopted a corner already made and a line already run. True, the line of Perkins had hot been then run, but his entry had been made, and when run would constitute the line of Bartlet. Before the patent emanated to the lessors of the plaintiff, as assignees of Bartlet, Perkins’ entry had been surveyed, its corners and line were fixed and known, and by one of those corners and lines the patent calls are bounded. The order of time in which these entries and surveys were made, and the patents *issued, are as follows: On [169 August 25, 1796, both entries were made, Perkins’ being first. On August 19, 1797, Bartlet’s entry was surveyed, and on October 5, 1801, Perkins’ entry was surveyed. In 1804, Bartlet’s survey was patented, and at a subsequent period Perkins’ survey was patented.
So far as it respects the survey of Bartlet, it may not be improper to remark that it was executed on entirely different ground from that covered by his entry, and of course must be considered as if no previous entry had been made. The entry calls to begin at the southwest corner of Pei’kins’ entry, whereas the survey was executed commencing at the southeast corner. But as this survey has been carried into grant, it is perhaps too late to question its propriety.
It is insisted, on the part of the plaintiff, that inasmuch as at the time of the execution of Bartlet’s survey, the survey of Perkins had not been made, the calls for this latter survey must be rejected, and the corner and line actually marked upon the ground must govern. And it is further insisted that the call for Perkins’ survey must have been a mistake, and that his entry was intended. If it were so, I do not see that it could make any difference. If the call had been, like the call in Bartlet’s entry, for a corner of Perkins’ entry, the corner thus called for must be a true corner of that entry. The surveyor of Bartlet’s entry had no right to fix the corners or the lines of Perkins’, and then to survey in such a manner as to destroy Perkins’ rights, while he professed not to interfere with them.
The real position taken by the counsel of the plaintiff is, that the survey actually made upon the ground is that which is to govern., and all corners, lines, courses, distances, and objects called for which are inconsistent with this actual survey, must be *170 rejected or controlled by it. I presume counsel would hardly sustain this position when stated in this manner, but it does seem to me that this is the legitimate result of their argument.
In many instances there can be no doubt that the certificate of survey as returned may be corrected in many respects by the survey as actually made on the ground, and by natural objects 170] *ealled for in the certificate. Thus, if the call be to run a particular course, and there be a marked line of the same general course, although not specifically the same, the marked line shall control the call. So if the call be to run a particular course from one natural object to another, the course between these two objects is the true course, whatever may be the course called for in the survey. So if the call be to run from a particular point a certain distance to a particular object, the termination of the line would be at that object, let the distance be greater or less than that called for in the certificate of survey. Course and distance must yield to natural objects. And even where the natural objects called for and actually existing on the ground are such as to show that the survey must have been made upon the different side of a base line from that returned in the plat and certificate, connected with proof that the survey was actually thus made, the plat and certificate may be corrected so as to conform to the survey as made. But quaere, whether the plat and certificate could be so Corrected as to include land on both sides the base line, although there should be proof that the survey was so executed and natural objects could be found to sustain the calls of the survey. These principles are fully sustained by the authorities cited by the plaintiff’s counsel. They are the principles by which we have ever been governed, and ever intend to be governed, in this class of cases, nor shall we purposely deviate from them in the present case. But to our understanding they do not require of us to reject entirely the calls of a survey, and merely to inquire what land was included in the survey as actually made, disregarding the natural or artificial objects called for. If such be the law, it is useless in a survey or patent that there should be any calls for boundary.
Applying these rules to the case now before us, it is urged upon us to reject the calls for Perkins’ corner and line, upon the hypothesis that the surveyor made a mistake in calling for these ■objects. The design is not to correct the particular calls of the *171, 172 survey as to course and distance, by objects called for, but to correct the objects called for by the courses and ^distances [171 actually run, in connection with other objects called for, in a measure reversing the rule that course and distance shall yield to natural objects. Before doing this, however, it may be well to inquire what would have been the situation of those under whom the plaintiff claims, had the entry and survey of Perkins not been made and called for. Reject the calls for Perkins’, and how will Bartlet’s entry stand? What would have been its form? “John Bartlet enters 400 acres of. land, on a military warrant, No. 1,324, on the waters of Three Mile creek, beginning — running north 60° W. 320 poles, thence S. 30° W. at right angles for quantity.” Such would be a strange entry. In fact, it would contain none of the qualities of a good entry. It would be absolutely void. Take, then, the survey: “Surveyed for John Bartlet, assignee, 133J acres of land, on the northwest of the Ohio, and on the waters of Three Mile creek, beginning at a beech, sugar tree, and hickory, running N. 60° W. 107 poles, crossing a branch at 103 poles,” etc. Now this would not be quite so bad as the entry. But still I apprehend there would be difficulty in finding the land. It is northwest of the Ohio, on the waters of Three Mile creek, and somewhere on those waters, where are standing a beech, sugar tree and hickory. Find three trees of this description, and if there are nowhere on the waters of the same creek similar trees marked .as a corner, and you probably have found the beginning corner of this survey, and having found the beginning ‘corner there can be no further difficulty. Let it be recollected that this survey was made in 1797, when the country upon Three Mile creek was a wilderness. By rejecting the calls for Perkins’ corner and line in the patent, there would be the same uncertainty as to the location of the land. Reject these calls, then, and the entry of Bartlet would have been void, and the location of his survey and patent entirely uncertain. They can not be rejected, and if there be any mistake in the case, it is in this, that the surveyor mistook the location of the corner and line of Perkins, and this mistake is corrected by ascertaining the true corner and line.
*Let us test the principle contended for by plaintiff’s [Í72 counsel by a hypothetical case. Suppose an entry should bo *173 made on one side of a river or creek, on the south side of Paint creek for instance, beginning at a particular corner, and running thence up the creek a specified distance, and then at right angles -ith the creek for quantity. Suppose this entry should be surveyed, and a plat and certificate returned, in which the surveyor certified that he commenced on the south bank of the creek, at the corner called for in the entry, and run thence up the creek to another corner on the south bank of the creek, thence other courses and distances all upon the south side of the creek, until he arrived at the point of boginping, and suppose this survey should be carried into grant. What would be the northern boundary of this survey? Can there be any doubt that it would be Paint creek. And would a person claiming under this patent be permitted to hold land upon the north side of the creek upon producing evidence to show that upon that side of the creek, and at some distance from it, there were trees marked as corners similar to those called for in the survey, and also a marked line connecting those trees thus marked as corners? Or even by proof that those trees and that line were marked as corners and as a line of the survey ?
‘If, in such case, Paint creek would be the boundary, then in the case before the court the line of Perkins is the boundary. There is no difference between the hypothetical case stated, and the case before the court, except in the one case a creek is called for as a boundary, in the other the line of a survey.
As before remarked, from first to last, from the time of the making of his entry up to the time of the emanation of his patent., it was manifestly the intention of Bartlet not to interfere with any of the rights of Perkins as acquired by his previous location. And yet it is insisted that we are bound to defeat this intention, because it is possible that by mistake the surveyor may have passed Perkins’ line, which he calls for as a boundary, and may have included land which belonged to Perkins, in the survey which he made for Bartlet.
In reality the case presents this simple question, whether 173] *when an individual in his patent or his deed is bounded by the lands of another, his patent or his deed can be so construed as to include those lands. As a general rule, we hold that they can not, nor do we find anything in tho Virginia military land *174 law, intricate though it may be, which requires us to depart from this rule in the present case.
The motion for a new trial is overruled, and judgment will be entered on the verdict.
Judgment for the defendant-