Spear, C. J.
Several questions are raised by the plaintiff in error.
I. He insists that the preferential mortgages are within the operation of section 6343, of the Revised Statutes, and inure to the equal benefit of all creditors.
That section, so far as it is involved in this case, is as follows: “All assignments in trust to a trustee or trustees, made in contemplation of insolvency, with the intent to prefer one or more creditors, shall inure to the equal benefit of all creditors in proportion to the amount of their respective claims.”
It is contended “ that when a debtor recognizes his insolvency and forms a purpose to assign his property to a trustee, all instruments that he may execute with that purpose in view are, in law, one instrument.” Hence, in the present case, the mortgages having been executed after the purpose to make the assignment had been formed and at or about the same time, the mortgages were, in fact and law, part of the assignment and therefore invalid as preferences.
In support of this proposition, the argument in brief is, that to hold the mortgages good as preferences, is to render the statute nugatory. The parties were aware, having resolved to make an assignment for the benefit of creditors, that'the preferences desired to be made could not be incorporated in that instrument, and therefore agreed to carry out the purpose by the appearance of separate instruments, in the form of chattel mortgages, thus attempting to do indirectly what the statute forbade them doing directly. The thing done is substantially that which is prohibited, and the law, looking through form and color, to substance, will strip off the disguises and give to the acts of the parties the true interpretation, and declare the several steps but one transaction, and as result, order that done which equity and fair dealing requires, viz: an equal distribution of the proceeds of all the property among all creditors in proportion to the amount of their respective claims.
*566 This doctrine has been confidently argued by eminent lawyers, and has recently received the sanction of at least one Ohio court of high standing; perhaps of more than one There is about it a spice of the heroic which challenges admiration, though it may not win acquiescence. Indeed, we may confess that when first presented we were attracted to the doctrine. But reflection has satisfied us that it is consistent neither with a fair interpretation of the statute, nor with the previous decisions of this court, and, as an attempted rule of property, would prove unsubstantial and delusive^ and practically impossible of execution.
Without question, at the common law, a failing debtor might prefer one creditor to another, and make a transfer of part or all his property for that purpose, provided he did so without fraud, and could do it even by an instrument which provided for the payment also of other creditors of the debtor.
The statute was enacted with full appreciation of the extent and reason of the rule of the common law. It is but applying a most familiar principle, therefore, to say that the legislature, in changing the rule, would make clear the changes proposed. Had it been intended to include within the class of instruments which were to be held as general assignments for the benefit of creditors equally, all transfers and conveyances whatever, made by a failing debtor, what more easy way than to say just that thing? Had such purpose been in the minds • of the law makers, it is entirely clear that the statute falls very far short of expressing the purpose. The language does not include all transfers, nor all conveyances, made in contemplation of insolvency, but assignments, and it is assignments by the failing debtor in trust to a trustee, which the legislature has declared must inure • to the benefit of all creditors. Now it is true that a mortgage, though generally a conveyance as distinguished from an assignment, may be made to serve the purpose of an assignment, for it may be made in trust, and a mortgagee may thus become a trustee. If, by the terms of the instrument, he is to hold the property for the benefit of some creditor other than himself, and is thus liable to *567 account to such other creditor, then a trust is created, and the mortgagee is a trustee. But in cases where, by the terms of the instrument, and by every intendment of the parties, he takes title for himself alone, as in the case at bar, the mortgagee cannot be regarded as a trustee. By its plain terms, the statute, as applied to the mortgages, does not make of them assignments, and there is an entire absence of a trust, or a trustee. Upon no accepted theory of construction, therefore, are we authorized, in view of the acknowledged rule of the common law, to enlarge the class, and say that it must by judicial construction, be held to include other instruments not described, instruments which, since our earliest adjudications, have been held to be valid and entitled to enforcement in accordance with their terms.
But it is insisted that the “trustee” contemplated by the statute, and to whom the language of section 6343 is to apply, is not the mortgagee, but the assignee named in the assignment, because the mortgagee does not, and cannot under the circumstances of the case, take possession of the property as against the assignee, the latter having the right of possession and of sale as against the mortgagee, who must work out his rights through the probate court and under the assignee. To this it is sufficient to answer, that the assignment is but an incident. It is a factor for which the creditor is in no way responsible. He has had no agency in procuring it, nor does he hold, nor claim to hold, by right of it. He finds, after his own rights have vested by virtue of his mortgage, that subsequent rights have attached to the same propertr'- by an act of the debtor talcing effect after his rights are perfect, by force of which the property is in court, to be disposed of according to law, and hence he resorts to that court for the vindication of his claim, and the fruits of his security. The possession of the assignee was not taken in the right of the mortgagee, but of the mortgagor, and his holding is adverse to the mortgagee. Moreover, the parties took every possible pains to declare by their acts, that the assignee was not intended to be Trustee for the mortgagee, and if, in the iace of this, possession, or right of possession, subsequently acquired, is to' be held as making of the *568 assignee a trustee for the mortgagee, then every mortgage will be a trust where the mortgagor disposes of the property by a sale, or even where he remains in possession of it. The claim may be plausible; it is not sound. In the sense that every receiver, or sheriff, or master commissioner, or other officer of the court who may hold property or money in which a creditor has an interest, or to which he has a claim, is a trustee for such creditor, the assignee for the benefit of creditors may be a trustee for a mortgagee, but in no other.
The conclusion hereinbefore stated is aided by application of another familiar rule of construction. Prior to, and about the time of the enactment, of the first statute on the subject, it was common for failing debtors to make assignments of their effects to a trustee with conditions as to benefits. Some were for the benefit of preferred creditors, with a clause that those who do not, within a certain time specified, release the debtor, on account of what may be received from the proceeds of the assignment, shall not be entitled to share in the proceeds. Others were for the benefit of such creditors only as, within a certain time, would agree to take a pro rata share in full; others for the benefit of certain creditors, and any balance to be returned to the assignor; and still others adding a condition controlling the time within which the trustee should proceed to sell and convert the property. All which was without the knowledge or consent of the creditors. Thus the debtor was enabled to delay the creditors’ remedy for an indefinite period unless they would consent to discharge the debtor on different terms from those provided in their contracts, and in effect permitted the debtor to make a bankrupt law upon his own terms, and for his own benefit. See Atkinson v. Jordan, 5 Ohio, 289, and Repplier v. Orrich, 7 Ohio, 2d pt. 246, for illustrations. The act of 1885 affected assignments to trustees when made fraudulently. The act of 1838, (now section 6343) went further and made all assignments to trustees in contemplation of insolvency, whether fraudulent or not, inure to the equal benefit of all creditors. See Hull v. Jeffrey, 8 Ohio, 390. In none of the cohtemporaneous decisions do *569 we get an intimation, even, that the payment, or securing, of an honest debt by a failing debtor was unlawful, or was deemed an evil which called for legislative interference. But the real evil is clearly manifest in these decisions, and the remedy for their correction as clearly embodied in the statute. Knowing, therefore, the mischief which was sought to be remedied, we may the more readily construe the language of the statute used to effect that object.
It is insisted that the precise question presented in this case has not been determined by this court. If by this, it is meant that the argument advanced by counsel was not urged in any of the reported cases, the claim may be correct. But if it is meant that the principle which must control this case, has not before been considered, it is, we think, an utter mistake. The principle announced as the controlling, underlying one in the above and following cases, is, we are confident, conclusive of the one at bar.
In the many decisions upon the general subject, from Atkinson v. Jordan, supra to its last deliverance upon the question, (save in the overruled case of Mitchell v. Gazzam, 12 Ohio, 815), this court has not omitted to affirm the right of a debtor, in failing circumstances, in good faith, to pay or secure, one or more creditors in preference to others. Wilcox v. Kellogg, 11 Ohio, 394; Fassett v. Traber, 20 Ohio, 540; Doremus v. O’Harra, 1 Ohio St., 45; Atkinson v. Tomlinson, Id., 237; Bloom v. Nogle, 4 Ohio St., 45; Harkrader v. Leiby Id., 602; Dickson v. Rawson, 5 Ohio St., 218; Bagaley v. Waters, 7 Ohio St., 359; Justice v. Uhl, 10 Ohio St., 170. From an examination of these decisions it will appear clear, if decisions can establish anything, that it is established beyond question, that however equitable it may seem to require the assets of an insolvent debtor to be distributed pro rata among his creditors, our statute fails to make cumpulsory provision for that end. But, on the contrary, it permits preferences, if made in good faith, though but little be left, or nothing at all be left, for other creditors equally meritorious.
The clause of the statute under consideration has been the subject of frequent review by the courts, and'there have *570 been many amendments as to other portions. Had the language of this section been regarded as obscure, we would suppose that, the attention of the legislature being directed to the subject, it would have been amended and its meaning relieved of doubt. But it has stood for over fifty years substantially as it stands today. And this, too, with full knowledge that the construction given by this court had, with the exception stated, supported preferences. More than this, the right of preference, as between preferred and general creditors, is distinctly recognized by two recent enactments. Section 3206a, of the Revised Statutes, passed in the year 1883, in giving a lien to laborers for wages, declares such lien “to be superior to the following liens taken or attaching during the existence of such unpaid labor claims, to-wit: liens of attachment, liens of mortgage given or taken at a time of actual insolvency of the debtor, or with a view of preferring creditors or to secure a pre-existing debt.” And section 6355, as amended in 1889 (being a part of the same title and chapter with 63'43), giving the priority of claims to be paid by the assignee, directs: * * * * “But judgments by confession on warrants of attorney rendered within two months prior to such assignment, or' securities given within such time to create a preference-among creditors, or to secure a pre-existing debt other than upon real estate for the purchase money thereof, shall be of .no force or validity as against such claims for labor to the extent above provided, in case of assignment.” Now, when it is remembered, that this section, as it stood prior to the adoption of section 3206a, and prior to the amendment, gave-claims for labor preference over the claims of general creditors, what possible necessity could there have been for the provision above quoted of 3206a, or the amendment of 6355, if the true intent and meaning of 6343 was to place the claims of general creditors on a par with securities given creditors by the insolvent debtor to create preferences? We do not expect the law-makers to do vain things. And. that the construction given by this court to section 6343 is in consonance with the legislative intent, is further shown *571 by the refusal, in the year 1885, by the Senate, to pass a bill offered by Senator Pruden, prohibiting preferences.
As we understand it, the “one transaction” theory, reduced to its last analysis, is predicated upon the condition of mind of the debtor, as to the purpose to make/or not, a general -assignment. The mortgage and assignment are not between the same parties, and it is conceded that they are diverse in their nature and object, and, that there is no intention on the part of either party that they shall be one. On the contrary, the intention is that they shall be separate and distinct in fact, and accomplish separate and distinct purposes. It seems also to be conceded that, however insolvent the debtor may be, and however full his knowledge of that fact may be, only so that he is not then conscious of a purpose to make an assignment, he then may, in a proper way, and fairly, prefer one or more creditors to others. He may, after giving the preference, omit the making of an- assignment and permit the remainder of his effects to be seized in execution, and still the preference may be good. But if he has reached a conclusion that he will then, or at a near future time, execute an assignment for the benefit of his creditors generally, then from that moment he ceases to have the right to use the property, or any of it, for any purpose other than that of an assignment, and any attempt to give a preference to one creditor will be destroyed by the vice of the intention of the debtor, and will be treated as a mere evasion of the object of the statute, and this intent and this evasion, will •cause the mortgage and the deed of assignment to become one instrument the same as if the mortgage had been specifically set out in the deed of assignment, and thus made part •of it. If this is not it then we confess our inability to comprehend the idea.
The proposition is open to many fatal objections. It rests, primarily, upon the assumption that the law relating to assignments, requires the property of an insolvent debtor to be applied to the equal benefit of all creditors upon conditions7 not contained in section 6843, which it does not, and upon, the further assumption that for some occult reason, there is a vice in the purpose to make an assignment, if *572 entertained while an intent to prefer is present, and, beyond this, it involves the confusing and commingling of distinct and separate rights. There can be no vice in the purpose to make an assignment, no matter what company it is found in, because the debtor has a right to do it. At the same time he has an equal right to make an honest preference, and there is not the slightest warrant, we submit, either in the statute, or in the decisions, ^for assuming that the latter right is to be held subordinate to the former, or to be made dependent for its exercise, upon the presence or absence of a purpose afterward, to exercise the former. The theory leads to the result that the purpose to exercise one independent right, at a proper time and in a proper manner, will destroy another independent right, for it is perfectly manifest that to say the debtor may not exercise the right to prefer is to take away that right altogether. It is the very fact that he realizes his inability to pay all creditors in full which induces a desire to prefer one or more, and if he has concluded that he may, or will, cause a part of his property to be devoted to the payment of debts generally, by an assignment, the exact condition has arisen which makes the right to prefer available. The “ one transaction” theory while admitting the right, denies its exercise at the time of all others when its exercise will effect a purpose of the debtor admitted to be lawful.
This theory is also inconsistent with the scheme of our registry laws. It would displace the rule that instruments of this nature, shall take effect from the time of their delivery to the proper officer, and substitute for it the state of mind, the purpose not yet executed, of the debtor, and which purpose may be subsequently changed.
Beyond this, the theory claimed, as a rule of property, would be impracticable, The object sought to be attained could be evaded by postponing the making of the assignment until such time had elapsed as would make the debtor’s state of mind at the time of the preference difficult of proof. It could be entirely neutralized by failure to -make any assignment at all. In order-to give it effect, in' spirit, and obtain a distribution pro rata of an insolvent’s effects, the *573 restraining power of the law would heed to be carried farther. It would be necessary to prevent the debtor, so soon as the fact of the insolvency existed and was known to him, from exchanging his property, or any of it, in satisfaction of a debt, and from selling his property and paying any debts, and also prevent the creditor from having advantage of a judgment lien by execution, or from obtaining a lien by taking judgment by confession, or otherwise. A retroactive insolvent law of'this nature would be impossible of execution.
It is contended that this is not a case of diligent creditors, but simply acquiesing creditors. But it is difficult to see how this claim advances the argument. The vital point of the present inquiry is not of vigilance on the part of creditors, or the opposite. In another view of the case that will become important. We are here dealing solely with the power of the debtors to make the voluntary preference. If that is satisfactorily established, certainly any question as to the right of the creditors to receive it cannot embarrass the •case.
The right of preference rests upon the natural right to acquire and control property. The jus disponendi is necessarily an element of ownership. To authorize the citizen to acquire property would be of little use if he had not the corresponding right to dispose of it. So long as he retains his dominion over it the property is his to do with it what he wills, save only that it must not be devoted to an unlawful purpose. Our statute, section 6835, fixes the time when an assignment for the benefit of creditors shall take effect. It is, at least so far as the transfer of control over the property is concerned, only from the time the deed of assignment is delivered to the probate judge. Until that is done, therefore, the debtor has dominion over the property, and it is subject to his disposition in all lawful ways. And, necessarily, the assignment can convey such property only as the assignor has at the time of such delivery.
Attention has been called to many decisions of other states. A review of them is unnecessary, as the law of this case may be satisfactorily determined without resort to them. *574 However, our examination leads to the impression that, where not affected by statutes equivalent to bankrupt laws, the holdings in most of the sister states are in harmony with the Ohio cases cited, and the conclusions here given.
As conclusion, we are satisfied, that in Ohio a failing debtor, knowing his insolvency, and in contemplation of assigning for the benefit of creditors, has a right to prefer one or more creditors to others, if he does so in good faith and hinders other creditors no more than is incidental to the preference, and this he may do by chattel mortgage delivered to the mortgagee before the deed of assignment is delivered to the probate judge.
2. Plaintiff in error also insists that the mortgages are invalid as preferences because not properly filed.
At common law a mortgage of chattels, unaccompanied by possession of the property mortgaged, was fraudulent and void as to creditors, and this principle is re-affirmed in our statute, section 4150, and following, save that the mortgage is validated, and a lien created, by compliance with the statutory requirements as to registry. The mortgage, or a true copy thereof, must be deposited with the township clerk where the mortgagor resides, at the execution thereof if a resident of the state, and if not such resident, and the property is within a township wherein is the office of a county recorder, the mortgage shall be filed withsuch recorder. Or, if the mortgagor resides in a township in which the office of county-recorder is kept, the mortgage, or a true copy, shall be filed with such recorder. But before the mortgage, or a copy, is filed the mortgagee, his agent or attorney, shall state thereon, under oath, the amount of the claim and that it is just and unpaid if given to secure the payment of money, and if given to indemnify against liability, as surety, such sworn statement shall set forth such liability, and that the instrument was taken in good faith to indemnify against loss.
In the present case, the mortgagor Horst resided without the state, the mortgagor Wachendorf resided in Springfield township, Hamilton county.
*575 No question is made as to the due execution of the mortgages. Immediately after the execution, a proper affidavit, by the mortgagee, was made upon each mortgage, respectively, in conformity with the statute. Then a copy of each mortgage, and of the affidavit thereon, was made. The three original mortgages with affidavit thereon, were thereupon filed in the office of the recorder for Hamilton county, in the city of Cincinnati, where the mortgaged property was. The copies were soon thereafter, and prior to the filing of the deed of assignment, deposited with the clerk of Springfield township. It is as to the sufficiency of these copies that the controversy arises. Do they satisfy the requirements of the statute ?
The common law having been changed by statute, it would follow, by force of a familiar principle, that the requirements of the statute should be fully complied with by those who seek to avail themselves of its provisions. This rule is recognized by numerous decisions of this court regarding mortgages. Erwin v. Shuey, Assignee, 8 Ohio St. 509; Samen, Trustee v. Eager, 16 Ohio St., 209; Hanes v. Tiffany, 25 Ohio St., 549; Nesbit v. Worts, 37 Ohio St. 378 ; Biteler v. Baldwin, 42 Ohio St., 125; Cooper v. Koppes, 45 Ohio St., 625, are authorities to the proposition that a failure to comply with the requirements of the statute'is fatal to the attempted lien These cases are instructive as showing the strictness with which the court has held parties to a compliance with the statute, and that defective instruments, or affidavits, will not be cured. Other cases are to the effect that mere form is not controlling, and where the affidavit made substantially complies with the statute, it will be held good. We are dealing with a case, not of form of affidavit, but of absence from an instrument deposited to perfect a lien, of any affidavit whatever.
Now what does the statute require? Westlake v. Westlake, 47 Ohio St., 315, is authority, if authority be needed, to the point that a filing in the city or town where the property was situated is- not sufficient, buft that there must also be a deposit with the proper officer at the place where the resident mortgagor resided. Where both are required, no rea *576 son is apparent for making any distinction between the two acts, nor for regarding one as higher, or more important, than the other, nor is any valid reason given why less formality should attend the filing of the mortgage, or true copy, in one place than in the other. If it is important that creditors, or others interested, in the one locality, have notice of the status of the mortgagor’s property, by sworn statement, and have access to a document which if false, might be the predicate of a criminal prosecution, why should not persons having a like interest, living in the other locality, have a like notice? Or if a copy of the mortgage, and a copy only of the affidavit, is sufficient in the one place, why would it not be in the other? It is impossible to see how the present case would be different if the mortgage, with affidavit had been filed at Springfield, and the copy with copy of affidavit, had been filed in Cincinnati; or how it would be different, in principle, if the resident mortgagor’s home had been in the remotest section of the state instead of in Hamilton county. It is insisted that creditors and purchasers are presumed to know the law, and therefore, those finding copy only of the affidavit on copy of mortgage on file should presume that the law had b.een complied with, and that a genuine affidavit had been attached to the paper filed at the other place. But what reason is there for requiring the acceptance of a presumption by creditors or purchasers at either place? Of course the anxious country creditor, if he wanted information from original sources, could travel to Cincinnati to see what the files there might disclose, but this would consume 'time, and time might be of the first importance. And if the task could be imposed upon one living in Springfield township, a like task would have devolved upon one living in the township of the state farthest distant from Cincinnati, had that section happened to be the home of either mortgagor. Other inconveniences incident to the situation will readily occur. The argument ab inconvenienti manifestly has application.
It has been urged that it was sufficient to file the mortgage, with affidavit, at Cincinnati, because the property was there, and therefore that was the place where persons inter *577 •ested would be most likely to consult the files. To this it would seem sufficient to suggest that the actual situs of the property is of consequence, or can have effect, only where there is a non-resident mortgagor, the actual place or places of residence governing where the mortgagors are all residents of the state, and further that personal property is transitory; it may be here today, and away tomorrow, the mortgagor having the right,without consent of the mortgagee, to remove it to any point within the county, while the residence of the mortgagor, though capable of transition, is less frequently the subject of removal.
But, however these considerations may affect the question, it would seem enough to say that the statute, for reasons abundantly good to the law-makers has prescribed: 1. What shall be filed; and 2, the place or places•, where filed. The thing to be filed is the mortgage, or a true copy, verified as required, by the oath of the mortgagee; the places, in this case, where to be filed, the town of the residence of the resident mortgagor, and the place where the mortgaged property was situate.
The statute, by its terms, requires a mortgage to be duly executed, and in like plain terms, authorizes as valid a copy of it; the statute, also, by its terms, requires an affidavit, but it nowhere, by direct language, or by fair implication, recognizes the validity of a copy of an affidavit, A true copy of the mortgage may take the place and serve the- purpose of the original, but the affidavit is no part of the mortgage. That instrument is complete without an affidavit, and .good between the parties. It is only to affect third parties that further formalities are necessary.
By the enactment of the registry law, the legislature has attempted to lay down plain rules, easy to be understood and followed, and,- so far as practicable, to allow all questions of priority to be settled by order of registration, and it is incumbent on the courts to further this'just and sound public policy by administering the law as they find it, and not, by yielding to the inclination to relieve hard cases, fritter away these wise provisions ordained by the law-makers. As to creditors, the mortgage is but the creature’of the statute, and *578 to carry out the intent of the legislature, we think that all material provisions of the statute must be complied with. To like effect are decisions of courts of other states where similar statutes are in force. Cases in point are: Hill v. Gilman, 39 N. H. 88; Porter v. Dement, 35 Ill. 478; and Reiff v. Eshleman, 52 Md. 582.
Giving effect to the language, and what seems to us to be the plain intent of the statute, we are constrained to the conclusion that the filing of a copy of a chattel mortgage, with copy of affidavit only, does not satisfy the requirements of the statute, and can have no legal effect whatever, but that an instrument, fully meeting the description given in the statute in every respect, is necessary to be deposited wherever the mortgage, or a copy of it, is directed to be placed.
It is insisted, further, by the plaintiff in error, that the preferences should be set aside as obtained by fraud, because the assignee, after the deed of assignment was delivered to him, at the request'of the mortgagees, purposely withheld the filing of the deed until he had first filed the mortgages, with intent to give the mortgagees an advantage over the other creditors. Not finding it necessary" to pass upon this question in disposing of the case, we express no opinion upon it.
In holding that the mortgages were legally filed we are of opinion the common pleas erred. For this error its judgment, as well as that .of the circuit court affirming the same, will be

Reversed.