## INSOLVENT DEBTOR—FRAUDULENT CONVEYANCE.[2] Dec 8

[Mahoning County Circuit Court, October Term, 1894.]

Frazier, Woodbury and Laubie, JJ.

*FARMERS' NATIONAL BANK OF CANFIELD v. JOHN P. MILLER ET AL.

1. Where a failing debtor, whose liabilities are in excess of his assets, conveys real estate to his son, who has knowledge of some of said liabilities, but not of their full extent, and there is no actual intent to defraud present in the mind of either grantor or grantee, said conveyance, under Sec. 6344 of the Revised Statutes of Ohio, is constructively fraudulent as to the creditors of said debtor.

2. A mortgage duly executed and delivered by an insolvent debtor to a trustee for the use and benefit of the wife of said debtor, to secure a *bona fide* indebtedness to said wife, should inure, under the provisions of Sec. 6343, of the Revised Statutes of Ohio, to the benefit of all the creditors of said debtor in proportion to the amount of their respective claims.

3. Where, in an action brought in the common pleas court under the provisions of sections 6343 and 6344, of the Revised Statutes of Ohio, and afterward taken to the circuit court, there are conflicting claims of some of the parties to said action, the circuit court will neither administer the trust nor remand it to the common pleas court, but the circuit court will certify its findings to the probate court as the proper forum for the administration of said trust.

FRAZIER, J. (orally).

Emery F. Lynn, as administrator of the estate of J. N. O. Lynn, filed in the Court of Common Pleas, his petition against John P. Miller and others, seeking to have mortgages made by John P. Miller to William Goxtheimer, Martha E. Miller and Frank Miller, as trustee for Esther M. Miller, set aside and the property applied to the payment of the debts of John P. Miller, under sections 6343 and 6344 of the Revised Statutes.

The petition of Emery F. Lynn, as administrator, was filed March 16, 1892, and on the 11th day of April, 1892, the plaintiff, The Farmers' National Bank of Canfield, filed its petition in the same court, and in addition to the conveyances sought to be set aside by Lynn, administrator, seeks to have declared void a deed made by John P. Miller to his son Frank Miller, claiming it was made with intent to hinder, delay and defraud the creditors of John P. Miller, and making Emery F. Lynn, as administrator, and each of the persons named in his petition, together with other persons having or claiming to have liens upon said premises by reason of judgments and orders of attachment, defendants to its petition.

The plaintiffs in each of said suits caused a notice of the pendency and object thereof to be published as provided in section 6344 of the Revised Statutes.

In the action commenced by The Farmers' National Bank of Canfield, Emery F. Lynn, as administrator, and Mary A. Rose, a creditor of John P. Miller, filed answers in the nature of cross-petitions, praying to be made parties thereto and secured their *pro rata* share of the costs and expenses of such action within the time prescribed by statute. Other defendants claiming liens filed answers and cross-petitions, setting up their several claimed liens; but did not give bond nor seek to comply with the conditions prescribed by section 4344, of

* This decision is cited in 8 Dec., 574.

the Revised Statutes, to entitle them to share with plaintiff, the benefits of such action. The two actions were, by order of the court of common pleas, consolidated, tried and appealed to this court, and is now submitted upon the pleadings and evidence. I shall not attempt to do more than state briefly our conclusions.

This action was commenced at a time when the bar of Ohio, in view of the opinion in *Rouse, Trustee, v. The Merchants' National Bank of Cincinnati*, 46 Ohio St., 493, largely entertained the opinion that the Supreme Court has or would, when the question again came before them, change the rule which had theretofore been established, that the statute, relating to insolvent debtors, does not affect a mortgage given by an insolvent debtor to secure one of his creditors, although it may have the effect to prefer a creditor and deprive others of the ability to obtain satisfaction of their claim. *Hull* v. *Jeffrey*, 8 Ohio, 390; *Fassett* v. *Traber*, 20 Ohio, 540; *Doremus* v. *O'Harra*, 1 Ohio St., 45; *Atkinson* v. *Tomlinson*, Id., 602; *Bloom* v. *Noggle*, 4 Ohio St., 45; *Harkrader* v. *Leiby*, Id., 602; *Dickson* v. *Rawson*, 5 Ohio St., 218; *Bagley* v. *Waters*, 7 Ohio St., 359; *Justice* v. *Uhl*, 10 Ohio St., 170.

After the publication of the opinion in *Rouse, Trustee*, v. *The Merchants' National Bank, supra*, such conveyances were generally attacked as being in effect fraudulent under the statute relating to insolvent debtors. The published opinions of some of the circuit courts were understood as holding such preferential mortgages, inured to the equal benefit of all the creditors in proportion to the amount of their respective claims. • *Commercial National Bank* v. *Cincinnati National Bank*, 2 O. C. D., 295; *Turner* v. *Reed*, Id., 384; *Sylvester et al.* v. *Hesslein et al.*, 3 O. C. D., 128.

Afterwards the Supreme Court in *Cross, Trus.* v. *Carstens*, 49 Ohio St., 548, affirmed and approved its former holdings, and holds the statute " permits preferences, if made in good faith, though but little be left, or nothing at all be left, for other creditors equally meritorious."

We hold the mortgages to William Goxtheimer and Martha E. Miller, having been given to secure actual existing indebtedness to them, are valid mortgages and constitute a first lien upon the real estate described in each.

We find at the time John P. Miller conveyed to his son, Frank Miller, the two tracts or parcels of land, one containing one hundred and one acres, the other, the undivided half of twenty-four and three-fourths acres, the indebtedness of John P. Miller, including his individual debts, and his liabilities as surety or indorser for his brother, David A. Miller, who was then insolvent, amounted to more than $7,000.00. We further find, the claims of plaintiff, which were originally contracted with Van Hyning & Co., bankers, and transferred to plaintiff as their successor, and renewed from time to time, was at the date of said conveyance an existing indebtedness. Also, the claims of defendants, Jackson Truesdale, Mary A. Young, G. W. Brooks, Mary A. Rose, and S. S. Gault, who claim to be subrogated to the rights of Mary Deal, by reason of having as surety paid the debt to her, were also existing indebtedness at the time of such conveyance.

That Frank Miller, at the time he received such conveyance, knew his father was in debt. He testified he knew of the claims of Mrs. Deal and Dr. Brooks, and also knew his father was liable as indorser or surety for his uncle, David A. Miller, but that he did not know the amount of his indebtedness or the extent of his liabilities as such indorser.

There was no actual intention to defraud the creditors of John P. Miller present in the mind of either the grantor or grantee, but it was constructively fraudulent and operated to the prejudice of his then existing creditors.

In *Jamison* v. *McNally*, 21 Ohio St., 295, it was held, " The act of February 12, 1863, amending section 17 of the ' act regulating the mode of administering assignments in trust for the benefit of creditors ' (now section 4344, Revised Statutes), applies to conveyances, constructively as well as those actually fraudu-

lent, as against creditors." In *Loudenbeck* v. *Foster*, 39 Ohio St., 203, McILVAINE, E., J., says, page 206: "A hindrance and delay of the creditor, caused by the trust assumed by David, constitute a constructive fraud and bring the case within 6344, Revised Statutes, in relation to 'insolvent debtors.' *Jamison* v. *McNally*, 21 Ohio St., 295."

We hold the deed from John P. Miller to Frank Miller is void as to the creditors of John P. Miller.

We find the consideration for the note of John P. Miller, to his wife, Esther M. Miller, dated February 8, 1892, calling for $1,685.70, was a note dated April 1, 1878, calling for interest at eight per cent. The consideration for the note of April 1, 1878, was the sum of $430.00, together with interest thereon, inherited by her from her father, which her husband had several years before 1878, paid upon real estate, the title to which was in his name; and we find at the date of said note, John P. Miller was indebted to Esther M. Miller in the sum of $1,685.70.

As to the instrument, or conveyance, dated February 8, 1892, made as a mortgage by John P. Miller to Frank Miller, as trustee for Esther M. Miller, to secure the payment of the note for $1,685.70 to Esther M. Miller, it is conceded by counsel seeking to maintain the instrument that the mortgage, if executed to secure the debt of a stranger, would be in legal effect equivalent to an assignment under section 6343 of the Revised Statutes, *Harkrader* v. *Leiby*, 4 Ohio St., 603, and would have inured to the benefit of all the creditors of the mortgagor, if the beneficiary had been any one other than his wife, but insist that under the holding in *Hitesman* v. *Donnell*, 40 Ohio St., 287, the mortgage to a trustee is the legal mode of giving security by the husband directly to the wife. The court there held in effect, that a mortgage made to secure a *bona fide* indebtedness of the mortgagor to his wife through a trustee, does not inure to the benefit of all the creditors of the mortgagor, but the mortgage, taking all its parts together, furnishes the means and only means, by which, as the law then stood, the husband could secure by mortgage a debt to his wife.

Since the decision in *Hitesman* v. *Donnell*, *supra*, the legislature has so changed the law relating to husband and wife, that husband and wife may contract with each other, and a husband may execute a valid mortgage directly to the wife.

Section 3112, of the Revised Statutes, as amended March 19, 1887, provides: "A husband or wife may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other."

In *Hitesman* v. *Donnell*, *supra*, McCAULEY, J., says: "If the wife was a *bona fide* creditor, as found by the district court, and might take security for her debt, she was entitled to the security in a form and in effect, as available to her as that taken by any other creditor to him for his debt."

"A mortgage directly from the husband to his wife, while it would have dispensed with a trustee and would not have been within the letter of the statute, would have been void at law, and subject to the uncertainty of being upheld in equity. Her security in this form would have been something less than that which might have been taken by a creditor not under disability—assuming her right to take security in a form as ample as might have been taken by any of the creditors of her husband. This security was given in the only way in which it could have been done without impairing that right."

We hold that the reason of the rule, or rather the reason for the exception to the general rule as stated in *Hitesman* v. *Donnell*, having ceased, the rule itself ceased, and that the mortgage should inure to the benefit of all the creditors of John P. Miller, under the provisions of section 6343, of the Revised Statutes.

We further find that Emery F. Lynn, as administrator, is first entitled to the benefits of the mortgage made to Frank Miller, as trustee, and that Mary A. Rose

and Emery F. Lynn, as administrator, are equally entitled with plaintiff to the first claim upon the property conveyed to Frank Miller in proportion to the amount of their respective claims.

It has been suggested that this court either administer the trust or remand it to the court of common pleas to be there administered. It would, from the nature of the conflicting claims which must necessarily arise in the administration of the trust, be impossible for this court to administer it.

Section 6364, Revised Statutes, provides, "In case of such notice being given, the court in which such transfer, conveyance, or assignment shall have been declared to have been made with the intent aforesaid, may proceed to administer the trust, both as to the creditors who are parties as aforesaid, and those who have not come in and been made parties, distributing to the latter the surplus, if any, after satisfying the claims of those who have preference as aforesaid; but if such court shall not so administer the trust, or if such notice shall not have been given, the said court shall forthwith, on declaring the intent aforesaid, cause a copy of the judgment to be certified to the proper probate court, which shall, on its own motion, appoint a trustee as in this chapter provided."

Section 5239 of the Revised Statutes provides: "When the circuit court makes a final order, or renders a final judgment, in cases brought before it on appeal, it may enforce the same by process issued therefrom, or it may remand the same to the common pleas court for execution or other process; the clerk of the circuit court shall certify the same to the common pleas court, and the clerk of the common pleas court, on receipt of the certified transcript shall immediately enter the same on the journal; and the judgment or orders so entered, unless otherwise directed by the circuit court, shall for the purpose of execution and other process, stand as the judgment of the common pleas court."

It might be regarded as too strict and technical a construction, to hold that we have no right to remand the case to the common pleas court to administer the trust, but the authority to do so is at least doubtful. The proper construction, probably, is that this court should either administer the trust or certify its findings to the probate court. If our authority to remand to the common pleas court was clear and undoubted, from the nature of the questions which will probably arise in the administration of the trust in this case, we would certify it to the probate court, where a trustee will be appointed to represent the general creditors, and may institute such proceedings as are proper and necessary to bring before the court all persons claiming liens or interests adverse to the general creditors, that their several rights and interests may be properly adjudicated. We direct that our findings be certified to the probate court.

*R. B. Murray & Ensign N. Brown*, for Plaintiff.
*Jones & Anderson*, for Defendants Miller.
*Emery F. Lynn*, for Lynn, administrator.
*L. D. Woodsworth*, for G. W. Brooks.
*Horace Smith*, for Mary A. Rose.
*Jared Huxley*, for Mary A. Young and S. S. Gault.
*R. B. Murray*, for Jackson Truesdale.